## LEES–BRADNER CO. v. NATIONAL TOOL CO.

No. 5683.

Circuit Court of Appeals, Sixth Circuit.

Oct. 8, 1931.

H. F. Lyman, of Boston, Mass. (Fish, Richardson & Neave, of Boston, Mass., and Harvey R. Hawgood, of Cleveland, Ohio, on the brief), for appellant.

A. J. Hudson, of Cleveland, Ohio (S. J. Kornhauser and Kwis, Hudson & Kent, all of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MOORMAN and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

This infringement suit is based upon two patents, relating to machines for grinding gear teeth by generating the appropriate involute curve thereon. The patents in suit are Lees, 1,390,145, September 6, 1921, and Schurr, 1,462,985, July 24, 1925. The District Court held each patent invalid for want of invention.

In each patent the device comprises a longitudinally reciprocating table, a rotatable gear-holding spindle mounted thereon, and intermediate translating devices whereby the intermittent reciprocating revolution of the spindle causes the reciprocating longitudinal motion of the slide. In the Lees patent, the claim in suit is broadly for this combination. The earlier art contains instances of the same combination, except that the reciprocation-causing power was applied to the slide instead of to the spindle. We agree with the District Court that there was clearly no invention merely in applying the driving power at one end of the chain of elements instead of at the other end. Normally, the mere transposition of parts does not constitute invention (Union Paper Bag Machine Co. v. Murphy, 97 U. S. 120, 126, 24 L. Ed. 935; Duner v. Grand Rapids Co. [C. C. A. 6] 171 F. 863, 866; Fox Co. v. Corona Co. [C. C. A. 6] 282 F. 502, 508); and this is what was done by Lees. It is claimed that greater accuracy of spindle motion was produced by this change, and that, in such a tool of precision, this increase, though slight, was vitally important. Perhaps this was true as to Lees' type of machine, in which the driving communication between spindle and table consisted of two tapes, winding like a cord on a curtain roller, and perhaps likely to cause slight imperfections in the translation of one motion to the other; but the claim in suit is not limited to that type, and defendant does not use it. Aside from this possible advantage, we are not impressed that there could be any distinct benefit from applying the driving power to the spindle rather than to the slide, save that we diminish the danger of lost motion as we lessen the number of parts through which transmission is to be made; and we cannot think that if, in fact, the recognition and application of this familiar principle created any advantage, it can alone support an inference of invention.

Evidence of large sales is relied upon. The situation is not such as to make this impressive. The whole machine embodying this feature is a large and expensive one, in the manufacture and sale of which competition would not be easy; and there is nothing satisfactorily indicating that the sales resulted from any merit residing in applying the power to the spindle rather than to the slide. Further, it appears that plaintiff itself, in its latest machine, which it is now preferentially pushing, has abandoned this patented

feature and gone back to the older method, and now applies the power to the slide.

Experience had demonstrated that the flexible tapes were not wholly satisfactory translating means. Sufficient flexibility and sufficient strength were not easily united. Accordingly, Schurr, who was employed in the manufacture of the Lees machine, planned to do away with the tapes and substitute something else. He attached a cam to his rotating shaft and an abutment to the slide, whereby the shaft, rotating, drove the slide. Broadly speaking, this was the commonest mechanical expedient, and could not involve invention. The only difficulty lay in so shaping the cam as to get the desired relative extent and speed of the longitudinal slide motion produced. This may have been, probably was, a difficult problem mechanically and geometrically; but it was the same problem always met and solved by those who used a cam for such purpose. We find no peculiar merit in the solution of this problem which justifies calling it an inventive step. That it did not produce any result, final or immediate, which was practically or theoretically better than came from the use of proper tapes, clearly appears, because about that time a new metal alloy was developed for the tapes, which cured the trouble with them; and the Schurr device was never built.

The claim sued upon in the Schurr patent must be given the broad effect which we have considered, and is invalid.

The decree of the District Court is affirmed.