### SAGE et al. v. PARKERSBURG RIG & REEL CO. *

No. 1306.

Circuit Court of Appeals, Tenth Circuit.

Dec. 20, 1935.

*Rehearing denied March 11, 1936.

Chas. G. Yankey, of Wichita, Kan. (Harvey C. Osborne, John G. Sears, Jr., Verne M. Laing, all of Wichita, Kan., on the brief), for appellants.

A. C. Paul, of Minneapolis, Minn. (C. L. Parker, of Washington, D. C., and Austin M. Cowan, of Wichita, Kan., on the brief), for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

PHILLIPS, Circuit Judge.

Sage and Boughner brought this suit against the Parkersburg Company for alleged infringement of Patent No. 1,476,-648, applied for October 11, 1923, relating to a sand reel mechanism in combination with a standard oil well drilling rig.

The elements of claim one of the patent are:

In combination with a standard well drilling rig including a derrick, a sheave at its top, front and back jack posts, a band wheel shaft and a band wheel, a sand reel mechanism consisting of,

(1) A driven shaft, (2) a sand reel spool on the driven shaft in line with the sheave, (3) a sand line on the spool passing through the sheave so there will be a direct pull on the line at all times, (4) driving connections between the band wheel shaft and the driven shaft, including slip clutch means whereby the band wheel shaft may slip with respect to the spool.

Claim two, differs from claim one, only in that the driving connection is positioned between the front jack post and the band wheel.

Claim three, differs from claim one, in that the driving mechanism is described as sprockets loose on the band wheel shaft and the sand reel shaft, a chain connecting the sprockets, and clutches for connecting the sprockets to the shafts, one of which is a friction clutch, and it includes means for controlling the frictional engagement of the friction clutch.

Claim four differs from three, only in that it provides for both clutches being of the friction type.

The standard rig is employed in the "up and down" method of drilling as distinguished from the rotary method of drilling. In the up and down method a bit is alternately raised and dropped in the hole by means of a cable.

In drilling with standard tools, the hole at the surface is relatively large. When it becomes necessary, a string of casing is set and the drilling resumed with a smaller bit, reducing the size of the hole below the lower end of the casing; this is repeated until the desired depth is reached. Thus a hole may be twenty inches in diameter at the surface and be reduced to five inches in diameter at the lower end.

In cable tool drilling, the bit cuttings are mixed with water to put them in a fluid condition so they can be removed by a bailer. The bailer consists of a long pipe with a valve at the lower end, which opens as the bailer is lowered into the hole, permitting bit cuttings, mud and water to enter the bailer and closes to retain them in the bailer when it is raised in the hole. Below each string of casing a bailer slightly larger than the next string of casing to be set is used. If the bailer passes down through the hole, the drillers know the hole is large enough to permit the casing to enter.

A standard rig consists of a derrick, power plant and operating mechanism. A sufficient number of sheaves or pulleys are located at the top of the derrick to carry the cables employed. The power for operating a standard rig is taken from a shaft known as the band wheel shaft or crank shaft, positioned adjacent to the derrick. On the opposite side and adjacent to the base of the derrick is located a large hoisting drum, commonly called a bull wheel, to which is attached a cable by means of which the drill is lowered into, and raised from the hole. The band wheel shaft is journaled in bearings supported by vertical posts known as jack posts. Keyed to the shaft between the two jack posts is a large wheel known as a band wheel. This wheel is driven by a belt connected to the power plant. The power plant is located at the rear of the derrick beyond the band wheel shaft. A walk is usually constructed from the floor of the derrick to the power plant. It passes by one of the jack posts. The side of the rig where the walk is lo-

cated is called the "walk" or "front side" and the other the "back side." The jack post nearest the walk is called the front jack post, and the other the back jack post.

On the face of the band wheel nearest the back jack post is a grooved pulley member, called a tugwheel. The grooves in the periphery of the tugwheel are connected by a rope belt with a similar member attached to the bull wheel, and by means thereof, the latter is driven.

A vertical post, commonly called a "Sampson post," acts as a fulcrum for a walking beam. One end of the beam is positioned directly over the hole in the center of the derrick, and has means by which the drilling cable may be attached to it. The other end of the beam extends beyond the side of the derrick at a right angle thereto, and is connected by a pitman rod to the end of a crank on the band wheel shaft. By this means a reciprocal up and down motion is imparted to the beam as the shaft revolves, thus giving the churning motion to the drill stem and bit.

Between the power plant and the band wheel shaft, is located a sand reel which consists of a shaft journaled in bearings on vertical supports, a spool mounted on the shaft and means for driving the shaft from the band wheel shaft. The spool has a live side and a reserve side on which the sand line is spooled. This is essential because a larger and heavier bailer is used at the top of the hole, and the smaller the diameter of the spool the less power it takes to drive it.

Up to about 1920 the means for driving the sand reel shaft was a friction pulley mounted on such shaft, which engaged the periphery, or outer face of the band wheel. One end of the sand reel shaft was journaled in a knuckle post. It was connected with a lever on the derrick floor. By moving the lever backward, away from the sand reel, the friction pulley could be brought into gradual contact with the band wheel and the pull on the sand line regulated. By moving it in the opposite direction the spool could be released and brought in contact with a brake permitting the bailer to descend, by gravity into the hole, regulated by the brake.

In the early type of standard rigs the sand reel was positioned on the back side; the spool was mounted on the back side end of the sand reel shaft and the friction pulley on the other end. This threw the reel out of line with the top of the derrick and the

shaft had to be set at an angle to the face of the band wheel to obtain even spooling. This necessitated the use of a bevel faced friction pulley. Later sand reels were also positioned on the walk side, placing the reel in line with the derrick and making possible the use of a straight faced friction pulley.

The band wheels were made of wood. The slipping of the friction pulley caused excessive wear on the face of the band wheel. Notwithstanding this, the above types of construction were generally used up to 1920.

On July 18, 1921, the plaintiffs filed application No. 485,438 for a patent on improvements in drilling rig sand reels. In the device covered by such application, and the first experimental sand reel constructed by plaintiffs, the driven sprocket was rigidly attached to the sand reel shaft and no provision was made for a clutch on the sand reel shaft. The application was rejected on the ground the device was inoperative. The application for the patent in suit stated that it was a continuation of application No. 485,438.

Plaintiffs made a drawing of the device of the patent in suit in April 1921, and completed an experimental device on September 27, 1921. In 1922 they completed a commercial device.

In the latter part of 1919, defendant proposed to the Texas Company that it try out a chain driven walk side sand reel. The Texas Company agreed.

In 1920, Lockhart, Vice President of defendant, designed both a back side and walk side chain driven reel, but concluded to try a back side reel first, believing it would meet with approval of more operators. Defendant prepared drawings and constructed a back side chain driven sand reel.

On December 1, 1920, Lockhart applied for a patent on a back side chain driven sand reel. The patent was granted January 3, 1922.

In February 1921, defendant sent Bloss, its chief engineer to Texas to install the experimental rig for the Texas Company. It was installed in the early part of March 1921 in accordance with the drawing made August 9, 1920.

The jack posts were placed closer together, and the keyway in the band wheel shaft was lengthened. A driving sprocket was mounted on the back side end of such shaft, and a driven sprocket on the sand reel shaft. There was a jaw clutch on the band wheel shaft shiftable into engagement with the driving sprocket, and a friction clutch on the sand reel shaft shiftable into engagement with the driven sprocket. The reel being a back side reel did not spool properly when the sand reel shaft was set parallel to the band wheel shaft. To overcome this defect the back side end of the sand reel shaft was moved toward the derrick. This effected proper alignment of the spool with the sheave on top of the derrick, but brought the sprocket on the sand reel shaft out of line with the driving sprocket on the band wheel shaft, and caused wear on the sprockets. The device was used until the well was drilled 1200 feet.

Bloss, on March 11, 1921, recommended that the device be changed from a back side to a walk side reel. About May 1, 1921, the proposed change was made. By changing to a walk side construction, the spool was brought into line with the sheave on the derrick and the two sprockets were placed in alignment. The driving sprocket, however, was still mounted on the rear end of the band wheel shaft. After such change, the reel was a success. It was used to complete the well where it was constructed, and during the summer of 1921, it was used successfully in other drilling operations.

Early in 1922 defendant commenced the manufacture of chain driven sand reels, substantially like the experimental reel above described after the change to a walk side reel.

In the latter part of 1922, defendant changed the location of its driving sprocket and clutch on the band wheel shaft, from the rear end of the shaft to a position between the band wheel and the front jack post. This permitted the use of a shorter sand reel shaft.

Plaintiffs make no claim of infringement until defendant changed the position of the driving sprocket and clutch and mounted them on the band wheel shaft between the band wheel and the front jack post. They claim that by mounting the driving sprocket at that point, there is less strain on the band wheel shaft, and the sand reel shaft is shortened, reducing vibration. Defendant contends that such change involved only mechanical skill. The master and trial court so found, and adjudged plaintiffs' patent invalid. This finding is

supported by persuasive evidence. Steen, Chief Engineer of the Texas Company, in a letter to defendant dated September 23, 1920, stated:

"By leaving the sand reel as located we can place a sprocket on the shaft between the band wheel and the shaft bearing, which will avoid the over-hang and reduce the chance of springing the shaft, * * *."

In a report to defendant, dated May 14, 1921, Anderson of the Texas Company said:

"I believe the scheme of placing the clutch on the crank side of the band wheel either by bolting a clutch jaw on or having clutch and flange made, would be preferable to having the clutch on the other side as by doing this it would no doubt shorten the sand reel shaft a little and it would put the whole thing where the driller could see it."

In a letter dated September 6, 1921, to the Texas Company, Lockhart said:

"Now that the principle of this friction clutch has been demonstrated, we wish you would raise the question with your Engineering department if they do not think it would be advisable for us to furnish a split combined bull wheel flanged and sprocket wheel for the walk side of the band wheel to drive this friction clutch chain driven sand reel."

The defendant designed, and about May 1, 1921, constructed a walk side chain driven sand reel. Immediately thereafter it was successfully and publicly used by the Texas Company in its drilling operations. This public use antedated plaintiffs' conception and the application for their patent.

■ The change of the location of the driving sprocket and associated clutch from the back side end of the band wheel shaft to a point on such shaft between the band wheel and the front jack post was a mere mechanical rearrangement of the elements of defendant's prior device, wherein each element performs the same function in the same way to accomplish the same result as in such prior device. While it improved the device and increased its efficiency, it merely carried forward the idea of the earlier device and involved no new inventive conception or principle.[1]

■ We conclude the improvement in plaintiffs' device over the earlier device of defendant involved the exercise only of mechanical skill and that the patent in suit is void for want of novelty.

The decree is affirmed.

---

[1] A mere change in an existing device involving a difference only in form, proportions or degree, and resulting in doing substantially the same thing in the same way, by substantially the same means, is not invention although better results are secured. Such changes amount only to a mere carrying forward or more extended application of an earlier idea or conception of another. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136; B. F. Goodrich Rubber Co. v. Gates Rubber Co. (C.C.A. 10) 54 F.(2d) 580, 583; Linville v. Milberger (C.C.A. 10) 34 F.(2d) 386, 389; Midland Flour Milling Co. v. Bobbitt (C.C.A. 8) 70 F.(2d) 416; In re Williams (Cust.& Pat.App.) 36 F.(2d) 436, 438; George F. Hinrichs, Inc., v. Henderson (C.C.A. 8) 32 F.(2d) 655, 657. See, also, Lees-Bradner Co. v. National Tool Co. (C.C.A. 6) 52 F.(2d) 782, and Mills v. United States, 75 Ct.Cl. 256.