Application of Gene O. SINEX.
Patent Appeal No. 6834.

United States Court of Customs
and Patent Appeals.
Nov. 14, 1962.

Wm. Griffith Edwards, McGrew & Edwards, Denver, Colo., Jesse Bowyer, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Lutrelle F. Parker, Arlington, Va., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH and SMITH, Judges, Judge JOSEPH R. JACKSON, Retired, and Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

Appellant has appealed from a decision of the Patent Office Board of Appeals which affirmed the examiner's rejection of claims 8 and 9 of appellant's application [1] for patent for a "LIQUID RECONCENTRATING APPARATUS." Both claims were rejected as unpatentable over Harris [2] the only cited prior art reference.

Appellant's invention is disclosed as embodied in a reconcentrator for liquid dehydrating agents employed in a "field dehydrator" which is alleged to have particular utility when used to remove moisture from natural gas at the well head. Appellant explains this use in his specification as follows:

"Petroleum gas as produced at the well head commonly includes liquid components comprising hydrocarbons and water. Systems employed for treating such gases are provided with apparatus for separating

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge Martin pursuant to provisions of Section 294(d), Title 28 United States Code.

1. Serial No. 643,472, filed March 1, 1957.

2. U.S. Pat. No. 1,258,562, March 5, 1918.

the liquid components and also for removing water vapor from the gaseous components. The gas dehydrating equipment commonly employed comprises an extended surface structure for effecting intimate contact of the gas with a liquid dehydrating medium such as either diethylene glycol or triethylene glycol. It is desirable to minimize the loss of the dehydrating agent which is normally recirculated after the absorbed water has been removed in a reconcentrating unit. Various types of reconcentrators have been employed with different degrees of effectiveness in the removal of water vapor and in the maintaining of the drying agent in the system. Accordingly, it is an object of the present invention to provide an apparatus for reconcentrating a dehydrating agent including an improved arrangement for minimizing loss of the dehydrating agent during the reconcentrating process."

The apparatus shown in the patent application drawing comprises an upper cylinder containing a heater unit, a tray or baffle plate, an overflow pipe which leads to a lower cylinder which collects the concentrated dehydrating agent, e. g., glycol, and a "reflux condenser." Weak or diluted glycol flows through a coiled tube in the lower cylinder where it is heated by the hot concentrated glycol in that cylinder. The heated weak glycol then flows through a conduit into the upper cylinder where it is further heated and then discharged into an air space in the upper cylinder over the tray or baffle plate. Due to the high temperature maintained in the upper cylinder, the entrained water in the discharged weak glycol forms vapor which passes into the "reflux condenser." The purpose of the "reflux condenser" is to condense and return to the upper cylinder any glycol which may be entrained in the water vapor while allowing most of the water vapor to pass through the condenser and out of the system. Appellant describes the purpose and construction of his reflux condenser in his brief as follows:

"The construction and arrangement of the reflux condenser embody the important features of the invention in issue. The condenser 59 is a horizontal cylinder and is provided with a packing 66 through which the vapors must flow when they are discharged from the boiler. The packing is made of a water-impervious material, illustrated as a roll of loose fabric of glass fiber threads 70 * * *. The reflux condenser operates to condense some of the water vapor flowing through the packing and retains it in minute or capillary spaces formed along the fibers of the threads of the fabric; this retained water saturates the packing and contacts and absorbs vapor of the dehydrating agent which passes into the packing * *. The condenser water mixed with the absorbed dehydrating agent collects until it exceeds saturation and the excess flows downwardly transversely through the packing to the bottom wall of the condenser and thence back along the bottom for return to the boiler through the inlet opening 58. * * *".

Rejected claim 8 defines appellant's invention as:

"An apparatus for reconcentrating liquid dehydrating agents and the like by the removal of moisture therefrom comprising a boiler, means for heating said boiler, means for supplying a mixture of water and dehydrating agent to said boiler, an absorber condenser comprising an elongated tube mounted in a substantially horizontal position above said boiler, conduit means providing a passage opening into the lower portion of said condenser for supplying vaporized mixture from said boiler to said condenser, means providing a vapor outlet from said condenser above and remote from said passage, and means arranged in said condenser between said passage and

said outlet and constituting an absorption bed for contacting the entire stream of vapors passing through said condenser, said means comprising substantially water impervious and non-porous fibrous packing material, the fibers of which have passages therebetween providing a packing which is condensate saturated during operation of the apparatus and through which packing material the dehydrating agent together with the condensed portion of the water moves downwardly and is returned through said conduit means to said boiler."

Rejected claim 9 differs from claim 8 in describing the packing as "water saturable" and in including a "means providing paths for easy flow of liquid downwardly through said packing transversely of the axis of said tube."

The Harris reference describes an "evaporating apparatus" used for de-alcoholizing liquids that foam during ebullition.[3] The apparatus shown comprises a jacketed or double-bottomed container containing screens to impede the upward movement of foam during ebullition. An outlet at the upper end of the container connects to a "coil," the outer end of which is connected to a condenser and vacuum pump. The patentee describes the "coil" as follows:

"This coil preferably consists of a chamber extending upwardly at a slight angle, and provided at the outer end thereof with a pocket or air chamber 14 projecting vertically and connecting to a similar chamber 15, which is inclined upwardly and adapted to extend back over the first-named chamber, and connect with a similar air-chamber 16, which projects vertically therefrom, and connects with a third chamber 17, which also extends upwardly at a slight incline, the last-mentioned chamber being connected to the outlet pipe 13.

"As noted, these slightly inclined chambers are provided with a fibrous, porous or granular material 19, which washes water from the alcohol. * * *"

The board appears to have affirmed the rejection of the claims as obvious over the prior art under 35 U.S.C. § 103. This issue was complicated at oral argument by the attorney for appellant and the solicitor, both of whom treated the rejection as being that the claims were "fully met" or "structurally anticipated" under 35 U.S.C. § 102. Therefore it appears that the two issues presented for our determination are:

(1) Was the statutory basis for rejection of the appealed claims 35 U.S.C. § 102 or 35 U.S.C. § 103?

(2) Assuming the correct reasons for rejection, were the claims properly rejected either as obvious under 35 U.S.C. § 103 or anticipated under 35 U.S.C. § 102?

1. A review of the proceedings below shows that rejected claims 8 and 9 were added by amendment after the examiner's final rejection of the corresponding original claims 1 and 5. The examiner indicated in a letter to appellant that the amendment had been entered but that "Claims 8 thru 10 newly presented * * are finally rejected on Harris, of record, as unpatentable thereover." The examiner, in his answer, under "Reasons for Rejection," states that "Claims 8 and 9 are held to be unpatentable over Harris."

We think that these statements indicate that the examiner had rejected the appealed claims under 35 U.S.C. § 103 as obvious over Harris. This view is further substantiated in the Examiner's Answer, where, in discussing the packing

3. "Ebullition—1. The boiling or bubbling of any liquid, caused by the formation of gaseous bubbles in its mass, due (1) to the application of heat, (2) to the escape of dissolved gas when pressure is removed, or (3) to chemical action. * * *

2. A breaking or rushing forth in a state of agitation like boiling, as of water in the rapids of a river or of lava from a volcano. * * *" Funk & Wagnalls New Standard Dictionary of the English Language, 1916 Edition, p. 784.

materials used by appellant and by Harris, the examiner states:

> "It is apparent to one skilled in the art that a wide variety of well known materials may be used as the "fibrous, porous, or granular materials" 19 in the tubes 12 of Harris. Such materials as glass wool, rock wool, steel wool, copper shavings and vermiculite may be mentioned to name a few of the suitable materials which would readily suggest themselves. As far as the physical properties are concerned, it is obviously desirable to select a non-porous material providing multiple passages, large surface areas and good heat exchange characteristics." [Emphasis added.]

In its decision, the board stated the rejection as follows:

> "Claims 8 and 9 are held by the examiner to be unpatentable over the patent to Harris."

The board's conclusion states:

> "We have carefully considered all of the arguments presented in the brief, the reply brief, and at the oral hearing but are not persuaded thereby that claims 8 and 9 are patentable over Harris. These claims are directed to an apparatus and it is well established that the patentability of an apparatus claim is determined only on novel structure recited over the prior art where the novel structure is unobvious to one skilled in the art. Patentability cannot be imparted to a claim by statements of a different use or different materials operated upon by the apparatus, in the absence of a positive inclusion in the claim of unobvious novel structure over the art." [Emphasis added.]

The confusion over the statutory grounds of rejection apparently stems from the discussion of the board following the above quoted statement. The board in its discussion of the rejection seems in words to base its decision on "the absence of novel structure recited in the claim over the reference disclosure." While the expression "absence of novel structure" could indicate that a rejection on lack of novelty under 35 U.S.C. § 102 was intended, it does not necessarily negate the rejection for obviousness over the prior art under 35 U.S.C. § 103. The board's statement that "it is well established that the patentability of an apparatus claim is determined only [1] on novel structure recited over the prior art where [2] the novel structure is unobvious to one skilled in the art" indicates clearly to us that the board understood the examiner's rejection to be based on 35 U.S.C. § 103 and intended to affirm the rejection on this basis.[4] We hold, therefore, that the appealed rejection of the claims is in essence a rejection for obviousness of the claimed invention under 35 U.S.C. § 103.

This resolution of the first issue finds further support in the Manual of Patent Examining Procedure, 3rd ed., sections 706.02 and 707.07(d) which approves use of the expression "unpatentable over" when there are "differences between the subject matter set forth in the claim and the reference relied upon." MPEP, 2d ed., which was effective at the time the examiner's answer was written, contains similar instructions. We think efforts to standardize the language used by Patent Office personnel in indicating the reasons for rejecting claims are commendable. However, consistent use of language taken directly from the patent statutes would be more helpful. For instance, had the examiner and board here stated that "the claims are rejected as obvious over Harris under 35 U.S.C. 103," there would have been no basis for the alternative construction of the rejection advanced by the attorneys at oral argument. We think a careful statement of the precise statutory grounds of rejec-

4. Had the board intended to affirm the rejection of the claims for another reason as it is entitled to do under Patent Office Rule 196(b), it seems unlikely that the board would have restated the basis of rejection as "unpatentable over Harris."

tion is essential in all cases and particularly in a case such as the present where Congress has seen fit to enact separate sections of the statute dealing with anticipation (35 U.S.C. § 102) and obviousness of the invention (35 U.S.C. § 103).

▮ 2. Since we have determined that the rejection on appeal is essentially a rejection under 35 U.S.C. § 103, the second issue to be here decided is whether:

" * * * the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * *" (35 U.S.C. § 103)

Appellant's objections to the holding of the board can be summarized as follows:

(a) The board erred in ignoring the expression "for reconcentrating liquid dehydrating agents."

(b) The board erred in finding that the "filter chambers" in the Harris reference act as condensers.

(c) The board ignored the limitation that the condenser be "substantially horizontal."

(d) The board erred in equating the packing of Harris' filters with appellant's "water impervious nonporous packing."

Resolution of these four objections of appellant will determine whether the board was correct in finding appellant's invention to be obvious over the Harris patent. For the reasons hereinafter stated, we think the board was correct.

▮ (a) The expression "for reconcentrating liquid dehydrating agents" is merely a statement of intended use and does not qualify or distinguish the structural apparatus claimed over the reference. This expression falls within the rule of the cases listed in Appendix "A" to Kropa v. Robie et al., 187 F.2d 150, 38 CCPA 858, in which the introductory

phrase or preamble of the claim does not state a limitation in the claim which distinguishes it over the prior art. See In re Joseph F. Sebald, 268 F.2d 430, 46 CCPA 964.

(b) It is the position of the board that the "coil" consisting of the three inclined chambers corresponds to appellant's absorber condenser. The board stated that appellant's term "absorber condenser":

" * * * has no patentable import over Harris because it is at best merely a statement or an indication of a particular use since this claim describes no specific structure thereof that does not have full or fair response in the reference disclosure for reasons given above. The arguments presented that the Harris structure under consideration is not and could not function as an absorber condenser have no bearing or merit in the absence of novel structure recited in the claim over the reference disclosure, in support thereof."

Appellant, in his brief, contends that the board was incorrect because:

" * * * Harris does not disclose a condenser having a packing of any kind. The inclined chambers provided with Harris' fibrous, porous or granular material are simple filters —not condensers. Harris provides a condenser 21 for condensation of the vapors after they have passed through such filters. *It is submitted that the term 'condenser' is a clear and definite designation of apparatus and is not met by a simple filter in which no condensation takes place.*"

We think that the inclined chambers shown by the Harris patent, while not called condensers in the specification or claims of the patent, necessarily function as condensers to condense the entrained water vapor and prevent it from passing through the coil along with the alcohol vapors. We think this fact would be obvious to a person of ordinary skill in this art at the time the invention in

issue was made. The patentee indicates the function of these chambers is to "wash the water from the alcohol." This can only mean that the entrained *water vapor* is condensed and returned to the vaporizing tank while the alcohol vapors, which have a lower boiling point,[5] are allowed to pass through the chambers and out of the system. Harris summarizes the functions of his "filters" as follows:

"It will thus be seen that I have provided a simple and efficient device for dealcoholizing, condensing, evaporating or distilling liquids, and have produced an apparatus which very effectively washes the entrained water from the alcohol, after they have left the vaporizing tank, the alcohol passing to the condenser, and the water returning to the container by gravity."

The purpose of the vertical air chambers which connect the filter chambers is explained by Harris as follows:

"* * * The pockets or air chambers 14 and 16 serve to separate the straining material, in order that the moisture may not be drawn through by capillary attraction, but will have to pass through the air-chambers after emerging from one section of the filtering material before entering another, *thus causing the entrained vapors to drop to the bottom of the inclined pipes and thence to the distilling vessel leaving the filtering material always free.*" [Emphasis added.]

It would be clear to a person skilled in this art that the patentee's use of the expression "entrained vapors" in the emphasized portion of the last quote is not technically correct, since the "entrained vapors" would not drop to the bottom of the inclined pipes until they were condensed to form liquid water. This is clear from the following description of a modification of the apparatus:

"In Fig. 3, I have shown a modified form, wherein the pockets 14 and 16 are provided with outlet pipes 17 and 18, which lead directly to the lower portion of the container, *thereby eliminating the necessity of the entrained water passing through different pockets of the fibrous material by gravitation to the container.*" [Emphasis added.]

We therefore conclude that the filter apparatus of the Harris reference, which condenses and returns the entrained water vapor to the evaporating tank, would suggest to a person of ordinary skill in the art that such a structure could be adapted without unobvious modification to function as the "reflux condenser" used by appellant to condense any entrained glycol vapors and return them to the upper cylinder and allow the water vapors which have a lower boiling point [6] to pass out of the system.

(c) Appellant argues that by requiring his condenser to be mounted "in a substantially horizontal position," it assures the return of the glycol to the boiler yet minimizes the counterflow of this returning liquid against the escaping vapor. While this advantage may be present in such a horizontal condenser, the claim language does not patentably distinguish appellant's condenser over the "slightly inclined chambers" of Harris. The Harris drawing shows the "slightly inclined chambers" to be at 9° angles to the horizontal. In our opinion "substantially horizontal" fails to patentably distinguish appellant's condenser over the "slightly inclined chambers" of Harris. In the absence of a showing in appellant's specification that a variation of 9° from the horizontal would not be included within the broad term "substantially horizontal," we think that the term would

5. Ethyl alcohol or grain alcohol boils at 78° C while the boiling point of water is 100° C. The Condensed Chemical Dictionary, Rheinhold, 1961.

6. Diethylene glycol, which appellant states may be used as a liquid dehydrating medium, boils at 245° C, while triethylene glycol, an alternative medium, boils at 287.4° C. The Condensed Chemical Dictionary, Rheinhold, 1961.

normally include the chambers of Harris. See In re Nehrenberg, 280 F.2d 161, 47 CCPA 1159.

(d) Appellant has correctly pointed out that the Harris patent states that the packing for the filter chambers is "a fibrous, porous or granular material," while appealed claim 8 requires a "substantially water impervious and non-porous fibrous packing material." Claim 9 requires only "a water saturable packing means." Even though the reference specifies use of a *porous* material, we think Harris was describing a material similar to appellant's *non-porous* material, except that he intended his packing to be *fibrous as a whole,* not that each fiber or filament be fibrous. Since the packing of Harris and appellant performs the same functions, as we have indicated above, we think Harris was describing a packing of substantially equivalent physical properties and that the appealed claims do not patentably distinguish the invention over the reference in this respect. It would be apparent to a person skilled in the art that a large variety of materials could be used to accomplish the purpose of the packing in appellant's reflux condenser. Assuming that appellant is correct in urging that his water-impervious and non-porous packing is specifically different from the packing used by Harris, we think the choice of appellant's packing would be obvious. A packing having *non-porous fibers* would be a natural selection where the purpose of the packing is to condense entrained glycol vapors on the packing surface while at the same time allowing water vapor to pass through. Selection of such a suitable material would be obvious to one of ordinary skill in the art.

 Finally, appellant has submitted an affidavit to show the commercial success of his invention. While there is nothing in the record to indicate whether the alleged commercial success was due to the features defined in the appealed claims, we need not consider the affidavit since we have no doubts about the obviousness of the invention defined in the appealed claims. In the absence of such doubts, commercial success is of no moment. In re Jaeger et al., 241 F.2d 723, 44 CCPA 767.

The decision of the Board of Appeals is affirmed.

Affirmed.