**Application of Kemper M. HAMMELL.**
**Patent Appeal No. 7235.**

United States Court of Customs
and Patent Appeals.
Nov. 5, 1964.

William Hintze, Harrisburg, Pa. (Truman S. Safford, Curtis, Morris & Safford, New York City, Marshall M. Holcombe, AMP Inc., Harrisburg, Pa., of counsel), for appellant.

Clarence W. Moore, Washington, D. C., (Fred W. Sherling, Washington, D. C., of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This appeal requires us to determine whether appellant's method, as defined in appealed claims 6 and 9 of his patent application, Serial No. 490,862, filed February 28, 1955, entitled "Methods and Tools for Making Connections," would have been obvious under the conditions stated in 35 U.S.C. § 103.

The specification indicates that the disclosed method and tools are designed for use with tapered electrical connectors. One such connector, described briefly in appellant's application, is a two-part unit in which a tapered male plug is inserted in a female receptacle. Provision is made for lead wires to be attached to the plug and receptacle. The degree of taper is such that when the plug and receptacle are in optimum frictional contact, the connector is self-locking.

As pointed out in an affidavit of Pierce, an employee of appellant's assignee, the usual method of assembling such connectors prior to appellant's invention involved forcing the plug into the receptacle with a pair of pliers. This method, says Pierce, was generally unsatisfactory because of non-uniform results and worker fatigue. Appellant's brief states that workers engaged in assembling such connectors were sometimes prone to push too hard, or not hard enough. If the push were too hard, the result was often deformation of the receptacle or even pushing the plug all the way through the receptacle, with consequent loss of the desired mechanical and electrical contact. If not hard enough, the result might be a loose connection, vulnerable to corrosion and possible loss of electrical contact due to vibration and other mechanical or thermal stresses.

Diagrammatically presented, appealed claim 6 reads:

"6. The method of making a tapered force fit mechanical and electrical connection between a tapered terminal and a receptacle therefor comprising the steps of

"(1) first pressing said terminal into mating relation with said receptacle

"(a) by application of an inserting force of increasing magnitude

"(b) while storing a portion of the inserting force to accumulate a predetermined amount of potential energy,

"(2) and subsequently applying said predetermined amount of potential energy to said tapered connector as an impact force thereby to bring said tapered terminal into optimum frictional engagement with said receptacle."

Appealed claim 9 is similar to claim 6, except that the "inserting force" of claim 6 is defined as "spring pressure" and there is no requirement in the method of claim 9 that the energy for the final impact force be drawn from the inserting force.

The advantage of appellant's claimed method is that application of a calibrated impact force for final seating of the connector parts assures substantially uniform assembly.

Appellant's application discloses an apparatus for carrying out the claimed method. While it is only the method with which we are here concerned, an understanding of the apparatus facilitates understanding of the claimed method. The apparatus is an inserting tool which consists essentially of a plug holder mounted on a spring-loaded plunger, and a cylindrical housing forming the handle of the tool. The plug half of a connector is placed in the holder and the

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief

Judge Worley, pursuant to provisions of Section 294(d), Title 28 United States Code.

narrow end of the plug is inserted loosely into the receptacle. After alignment, a gradually increasing pressure is brought to bear on the inserting tool and the connector parts are pushed into a closer fit. During this part of the operation a portion of the energy of the pushing is absorbed by and stored in the spring. When the stored energy reaches a certain predetermined amount, a detent releases a hammer and the spring forces the hammer down, delivering a sharp blow to the plunger which finally seats the plug in the receptacle.

Both claims stand rejected as unpatentable over the following references:

| Chisholm | 1,720,318 | July 9, 1929 |
| Hedler | 2,060,864 | Nov. 17, 1936 |

"Taper Connectors," Electrical Manufacturing, August 1953, p. 143.

———◆———

The Chisholm patent discloses an apparatus for locking embossed aluminum printing strips onto projections on a holder. The apparatus delivers a blow of constant magnitude to the strip, thus crimping its edges over the edges of the projection. The mechanism is very similar to the tool disclosed by appellant in that it stores a portion of the energy of the initial thrust and delivers it in the form of a sharp, measured impact by means of a spring and latch arrangement.

The Hedler patent discloses a method and means for joining a cable to a cable fitting. The cable end is inserted into a tapered sleeve and the sleeve is driven into a similarly tapered hole in the fitting, causing the sleeve to bite firmly into the cable.

The Electrical Manufacturing article discloses tapered connectors substantially like those for which appellant designed his claimed assembly method.

The problem appellant faced prior to his invention was to find a way to insure uniform assembly of the plug and receptacle elements. However, as the board stated:

"* * * the solution to the problem of applying a limited but adequate force to effect the connection of two parts to be joined was already known to reside in storing potential energy during the application of the initial pressing force to be released automatically later as a calibrated impact that completes the setting of the parts. This procedure is precisely that taught by the Chisholm patent for the recognized advantages of securing uniformly an adequate but not excessive assembly force. Application of this known assembly procedure of Chisholm, with its known advantages to the assembly of tapered electrical terminals° of the Electrical Manufacturing article with a known requirement for these same advantages, is obvious to one of ordinary skill in the art and is unpatentable."

Moreover, we might point out, as did the examiner, that Hedler teaches the use of impact means to effect a force-fit frictional connection.

Appellant argues that a claimed method may be patentable despite the prior existence of apparatus capable, with modifications, of carrying out the method. We are in full agreement, so long as the qualifying word "may" indicates a possibility rather than a certainty. For it is also true that such apparatus is prior art like any other, and must be weighed fully in the determination of what would have been obvious to one of ordinary skill in the art at the time the invention was made.

Appellant contends further that Chisholm represents "nonanalogous" art. While we agree that Chisholm is not specifically directed to the art of tapered

electrical connectors, it does disclose a tool capable of delivering a calibrated impact force. And we think its teaching would have been pertinent to that art and within the knowledge of a worker faced with appellant's particular problem.

 We have considered fully the Pierce affidavit, which states that tapered electrical connectors "are presently sold at an annual rate in substantial excess of 100,000,000, and are assembled principally by the method disclosed in" appellant's application. While well-documented proof of commercial acceptance, shown to be directly attributable to the merits of the claimed invention, is evidence of patentability, such proof is not persuasive where, as here, the remainder of the evidence so clearly indicates that the claimed invention would have been obvious at the time it was made. E. g., In re Sinex, 309 F.2d 488, 50 CCPA 1004; In re Jaeger et al., 241 F.2d 723, 44 CCPA 767.

For the foregoing reasons, the appealed decision is affirmed.

Affirmed.