**PLASTIC CONTAINER CORPORATION,**
**Plaintiff,**

v.

**CONTINENTAL PLASTICS OF OKLAHOMA, INC., Defendant.**

**No. CIV–76–1011–B.**

United States District Court,
W. D. Oklahoma.

Dec. 19, 1980.

On Request For Attorney's Fees
March 26, 1981.

Walter Ames, Washington, D. C., and Thomas J. Greer, Jr., Arlington, Va., for plaintiff.

William R. Laney and Jerry J. Dunlap, II, Oklahoma City, Okl., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

This matter came on for trial before the court on September 29, 30 and 31, 1980, with plaintiff represented by Walter Ames and Thomas J. Greer of Washington, D.C., and defendants represented by William R. Laney and Jerry J. Dunlap of Oklahoma City, Oklahoma.

Upon consideration of the evidence adduced at trial, this court makes the following Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. This is a patent infringement action brought under the provisions of 35 U.S.C. § 281 and entails defenses asserted by the defendant under the provisions of 35 U.S.C. § 282.

2. The principal substantive issue before the court is the validity of the two claims of the plaintiff's U. S. Patent RE 28,861. The issue of infringement of the claims, if valid, has been settled of prior adjudication of this question in an earlier part of this litigation. Defendant also contends this is an exceptional case within the meaning of 35 U.S.C. § 285, and thus may justify an award of attorneys' fees to the defendant.

3. The plaintiff's patent here in suit is a reissue patent, having been reissued on June 15, 1976, by the United States Patent Office on the basis of an application filed on May 23, 1975, and is a reissue of Hall U. S. Patent 3,473,681 also owned by the plaintiff, and previously held invalid.

4. The reissue patent concerns a container and a double or two-part closure for that container, with the parts interfitted with each other and cooperating in such a way that opening of the container would be difficult for children.

5. The patent in suit contains two claims (claim 5 and claim 8) directed to the described safety container closure assembly, and these two claims are as follows:

5. a safety container closure assembly including

(a) a container having an opening,

(b) an internal closure positioned within said opening, said closure having a key recess therein,

(c) an external cap positioned over said opening,

(d) said external cap carrying a key at a location not coincident with the location of said key recess,

(e) whereby said cap must be removed to insert the key into the key recess and thereby remove the internal closure, and

wherein said external closure cap is provided with a peripheral skirt, the low-

ermost part of said skirt carrying said key, the interior of said skirt carrying an annular bead which snaps over a complementary bead around an outer periphery of the container opening,

whereby the key carried by the external cap functions as a tab against which the thumb is pressed in a generally upward direction to remove the external cap from the container and functions additionally as a key for cooperation with the key recess of the internal closure to thereby permit the internal closure to be removed from its position within the opening of the container.

8. A safety container closure assembly including,

(a) a container having an opening,

(b) an internal closure in the form of a plug positioned within said opening, said closure having a key recess therein,

(c) an outer closure in the form of an external cap positioned over said opening,

(d) said external cap having a skirt integral therewith and depending from top of said cap, the interior of said skirt carrying an annular bead which snaps over a complementary bead on the outer periphery of the container opening,

(e) a combination thumb abutment-key integral with and extending substantially horizontally outwardly from said skirt at the lower portion of the skirt, said thumb abutment-key functioning as a tab against which the thumb is pressed in a generally upwardly direction to remove the said external cap from the container and functioning additionally as a key for cooperation with said key recess of said internal closure to thereby permit said internal closure to be removed from its position within the opening of said container.

6. This case comes before this court as the most recent phase of protracted litigation between the same parties involving, essentially and in substance, the same subject matter. In a first suit, the Hall U. S. Patent 3,473,681, upon which the reissue patent in suit is based, was held by this court invalid and not infringed by the defendant, and that decision was affirmed on appeal. (No. 74–1123) (10th Cir. Oct. 30, 1974).

7. For purposes of comparison, the two claims of the reissue patent in suit with the most similar or nearly identical invalid claim appearing in the original Hall patent, claim 5 of that patent is set forth in extensio:

5. A safety container closure assembly including,

(a) a container having an opening,

(b) an internal closure positioned within said opening, said closure having a key recess therein,

(c) an external cap positioned over said opening,

(d) said external cap carrying a key at a location not coincident with the location of said key recess,

(e) whereby said cap must be removed to insert the key into the key recess and thereby remove the internal closure, and

wherein said external closure cap is provided with a peripheral skirt, the lowermost part of said skirt carrying said key, the interior of said skirt carrying an annular bead which snaps over a complementary bead around an outer periphery of the container opening.

8. In affirming invalidation of claim 5 of the original Hall patent, the Tenth Circuit Court of Appeals noted that the safety container closure assembly there claimed was anticipated as including only:

"an aggregation of elements old in the art, which when considered together, disclose all of the claimed elements" from the combination of which "no new functional relationship arises"

The appellate court also affirmed, as a second and alternate reason for the invalidation of the Hall patent, and claim 5 in particular, the obviousness per 35 U.S.C. § 103 of the claimed container closure assembly in view of the teachings of the prior art, particularly the Mostoller and Velt U.S. Patents. The appellate court noted particu-

larly, and cited, the admissions of the plaintiff's President and the patentee Hall relative to the very slight degree of modification from the known prior art which had been involved in arriving at the alleged invention.

9. A comparison of the two claims in plaintiff's reissue patent here in suit with invalid claim 5 of the original patent shows that the only difference of substance to be found is the recitation in the two reissue claims that a structural element present and referred to as a key in invalid claim 5 can be pushed upon to remove an external cap which carried such key. The cap and key, and arrangement and location of each, were referred to in the original invalid claim 5. Only the thumb pushing capability has been added.

### ANTICIPATION AND LACK OF NOVELTY OF THE CLAIMED SUBJECT MATTER UNDER 35 U.S.C. § 102

10. No single prior art patent or publication placed in evidence by the defendant in the course of the trial before this court on plaintiff's reissue patent disclosed each and every identical element arranged in the same combination as such elements are recited and arranged in the two patent claims.

11. The patent claims and not the specification or drawings define the invention and its true scope. Further, the terms used in patent claims are to be accorded their ordinary meaning, absent a manifest contrary intent on the part of the patentee. Each and every element which is recited in the two claims before the court can be clearly discerned in the collective prior art of record.

12. The trial and appellate court's prior finding in the litigation on the first Hall patent was that everything appearing in claim 5 of that patent was "anticipated" by the prior art, which, by the definition appearing in the opinion of the appellate court affirming the invalidity of that claim, meant that all the prior art "considered together, discloses all of the claimed elements" in a combination from which "no new functional relationship arises."

13. Taylor U. S. Patent 1,761,597 (in DX–6 and see DX–23) discloses an external cap for a container, which cap carries a projecting tab or abutment which the patent states can be used as a prong or key to remove an internal closure positioned in that same container, and also used as a finger or thumb abutment or tab to allow the external cap to be snapped or pushed off of the container.

The 1931 Taylor patent teaches and equates to the sole difference between the two claims of the plaintiff's reissue patent in suit and claim 5 of the original Hall patent, the narrowest claim of that patent (and closest to the two claims here in suit), and held invalid as containing only elements which were, in their entirety, to be found in the prior art. It appears in logic the sum of the Taylor disclosure plus the other prior art equals the sum and arrangement of all of the elements in the two claims of the patent in suit.

14. The teachings and disclosure of the Taylor patent, British Patent 598,455 (in DX–6), offered and received in evidence here, also includes a horizontally projecting, integrally formed element carried on an external cap, and performing the dual function of a key for removing an internal closure or cap, as well as a thumb tab. Again, this prior art reference, when considered conjunctively with the teachings of the prior art previously considered by this court in invalidating the original Hall patent, equates to the only and slight difference resulting from the added functional statement in the two reissue claims now before the court. A fortiori, all of the structural elements now named in the claims can be found in the prior art of record.

15. The thumb removal function characteristic to the other described property of the key as the latter was long known to the prior art, and was there carried on external snap caps, does not enable any new functional relationship or new result to arise from this combination. This identical dual function of a single element projecting out-

wardly as a tab or abutment from an external cap is clearly recognized by the express wording of the Taylor patent, and is contemplated by the logical usage of the cited British patent as it was interpreted at trial by those having ordinary skill in this art. The two claims of the patent in suit become anticipated by the test set forth in *Scaramucci v. Dresser Industries*, 427 F.2d 1309 (10th Cir. 1970).

16. In the light of a different test enunciated in this circuit, the Mostoller and Budan patents (in DX–6 and see DX–8 and DX–14) are anticipatory of the claimed structure if the doctrine of equivalents be given application. While the rule that the function—or use—reciting preamble of a patent claim does not prevent the thereafter positively recited combination of structural elements from being anticipated by a prior art reference which has the same elements or their equivalents described therein, it can be seen that the container, internal closure and external snap cap recitation found in both of plaintiff's claims are clearly discernible in the Budan prior art patent without distortion of interpretation. Budan does not, in fact, show an external cap which has a circumferential bead around the inside thereof for snapping over a complementary bead on a container, though Budan does clearly describe a combination thumb tab-key projecting horizontally outwardly from the skirt of an external snap cap and illustrates the same in his drawings.

17. The type of snap cap lid provided in Budan functions as does the snap cap lid claimed here by the inventor Hall, and the interchangeability of the Budan type snap cap lid with a plastic snap cap of the type made by plaintiff for years before the alleged invention, is suggested in British Patent 757,918 (in DX–6) and by Budan itself, which indicates that the external lid there shown can be made of a plastic material. The British patent 757,918 states that snap cap lids of the type having a skirt and an internal circumferential bead with the thumb tab projecting therefrom can be used on either milk bottles or on medicine vials and bottles, thus indicating the equivalency of this type of structure to that which is shown in the Budan patent (Williamowsky testimony). Equivalence is present to one having ordinary skill in the art on the eve of the alleged Hall invention, and for this reason the Budan teaching, otherwise conforming to the positively (post-preamble) recited elements of both claims of plaintiff's patent can be equated to the claimed closure assembly. The Budan structure achieves substantially the same results, in substantially the same way by using the same or equivalent means as does the Hall contained closure assembly. The thumb is used to push against a key to get the external cap off the container, and that same key, previously pressed on by the thumb, is then used to engage a recess in an internal closure and pull this internal closure from the container upon which the external cap was located.

18. In terms of anticipation under § 102 by application of the doctrine of equivalents, the Mostoller patent does not approach quite so closely to a complete anticipation of all of the positively recited structural elements as does the Budan patent. Mostoller, however, is of interest since it is an assembly for deterring access to dangerous contents of a container. It does include all of the basic structural elements called for in the claims and is required to achieve the same results achieved by the plaintiff's assembly. Its wire key can function as a thumb tab. Those working in this art in early 1968 on the eve of the time of the alleged invention would have been educated by the teachings of the Yochem patent (in DX–6) in 1960 that snap cap lids with thumb tabs thereon may be substituted for cork stoppers of the type shown in Mostoller, and this knowledge, along with the knowledge possessed by those in the art of how to integrate the existing thumb tabs with a key function (per Taylor), may have strongly suggested use of a snap cap lid carrying a thumb tab-key in place of the Mostoller external cork stopper carrying a key susceptible to use as a thumb tab. Since the two prior art references constituted by Mostoller and Budan contain all of

those elements which appear in the two claims of the Hall patent, arranged in the same way and functioning to achieve the same result, the express teaching of the thumb tab-snap cap element in Mostoller, and an internal bead element in Budan being the only exceptions, it can be perceived that these latter differences fade into unimportance in view of the skill possessed by one ordinarily skilled in this art in 1968, after being taught by the 1960 Yochem patent, the 1957 British patent 757,-918, the Taylor 1931 patent, and the 1956 British patent 757,918, the Taylor 1931 patent, and the 1956 British patent 598,455.

19. Based on the foregoing reasons, it is held that under the interpretation and definition of anticipation as previously employed in this circuit in a number of its more recent, as well as earlier, decisions the two claims of the patent in suit are anticipated by the Mostoller and Budan patents.

## OBVIOUSNESS OF THE CLAIMED SUBJECT MATTER UNDER 35 U.S.C. § 103

20. Relative to section 102 of the patent statute, the collective or cumulative teachings of the prior art must be considered relative to whether they rendered the claimed subject matter obvious to one having ordinary skill in this art at the time of the alleged invention.

21. Pursuant to the Supreme Court's decision in *Graham v. John Deere Company*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), under 35 U.S.C. § 103 relative to the validity of patent claims, three factual inquiries are to be made by the fact finder. These are:

(a) The scope and content of the prior art are to be determined;

(b) the differences between the prior art and the claims at issue are to be ascertained; and

(c) the level of ordinary skill in the pertinent art is to be resolved.

22. The court first determines, pursuant to *Graham*, and the wording of § 103, that the pertinent or relevant art entitled to consideration here is the art of containers and closures. Prior art and prior knowledge concerning this field is relevant and pertinent to the present inquiry on the question of obviousness.

23. With respect to the first factual inquiry required by *Graham*, the court, in evaluating the scope and content of the prior art, is confronted with those prior art patents and publications placed in evidence by the defendant at trial, and is aided in considering that prior art and its proper scope by the testimony of the defendant's witnesses, each being well qualified to express opinion as to the level of skill in this art, and the meaning and interpretation of these prior art patents and publications.

24. The scope and content of the prior art, as the court finds it to be, can be summarized as follows:

(a) Several basic prior art patent references tend to contain parallel or equivalent teachings in their relevancy to the claimed closure assembly. These patents are the Mostoller U. S. Patent 1,155,082, Cohn U. S. Patent 3,044,648, Velt U. S. Patent 3,409,159, Volpi Italian Patent 554,186, and Martin Netherlands Patent 103,451 (all in DX-6). These patents are thus grouped and are termed basic or primary patents because each of them shows an internal closure or plug fitted in the open mouth of that container and an external cap fitted over the container while the plug is in place. In each the external cap carries a key which, when the cap is removed, is fitted in a recess in the internal plug and used to extricate or pull out the plug. This evaluation was made by this court in the original litigation between these parties, and was affirmed on appeal.

Also, several of the patents indicate that the particular shapes and locations of the keys carried thereon, and used to engage the inner cap or plug recess, can be varied in shape and in location, and several alternate shapes of such keys, other than those specifically shown, are suggested in the patents. All of these primary or basic patents, except the Volpi

Italian patent, expressly contemplate the usage of the container closure assembly described for safety or otherwise child-resistant purposes.

(b) A second group of prior art patents differs principally from the primary patents discussed above in showing key elements also useful as thumb tabs and which project horizontally from external snap caps employed on containers. These patents, like the primary patents, clearly state the utility of these key elements or prongs to be the engagement of recesses either present in, or formed in, internal closures or plugs after removal of the external cap from the container upon which both that plug and the external cap are located. The patents included in this grouping are Budan U. S. Patent 2,434,787, Raschick U. S. Patent 1,621,902 and Cadwell U. S. Patent 1,092,519. The Budan patent indicates that the external cap and its integrally formed thumb tab-key element there shown can be made of plastic.

(c) The remaining patents which are particularly considered may be described as suggestive or directive patents because they clearly point the way to the elimination of any slight differences which may exist between the principal or most basic patents described above, and the plaintiff's claimed container closure assembly (all appearing in DX–6).

Included in this group are:

Yochem U. S. Patent 2,958,439, which as of 1960, taught that a plastic snap cap lid having a horizontally projecting, integrally formed plastic thumb tab should be utilized in place of cork closures of the type shown in Velt, Cohn, the Volpi Italian and the Martin Netherlands patents;

Taylor U. S. Patent 1,761,597 which, as early as 1930, taught the art that it was feasible and indeed desirable to place on a snap cap external closure, a downwardly and outwardly projecting element which was shaped and intended to function as both a key and as a thumb tab, with the key useful for extricating or pulling out an internal

stopper or plug locatable in the same container as that which carries the external cap;

British Patent 598,455 issued in 1948, which then taught the art that a thumb tab-key element formed integrally with an external cap, and carried on the lower portion of the skirt of the cap, should be shaped almost identically to that here proposed by plaintiff, and used for the identical purpose of engaging a recess in an internal plug or closure to pull that internal closure from a container after the external cap had been removed by pressing on the key with the thumb;

British Patent 757,918 issued in 1956, which added to the knowledge of those ordinarily skilled in the art, a teaching that the thumb tab carrying plastic external snap cap lids used on containers could be used with equal facility on different sorts or types of containers, including milk bottles and medicine bottles; and

Italian Patent 554,078, which discloses as one of its illustrated embodiments (in Figure 3), an arrangement of a plastic external snap cap, a plastic internal plug having a recess and a container, all corresponding essentially identically to that of the plaintiff except for the location of the thumb tab there shown on an upper portion of the skirt rather than on the lower portion of the skirt (see also DX–21).

25. Consideration of two prior art publications is also probative. These are the manufacturer's catalogues of Celluplastics, Inc. (DX–52) and of Lermer Packaging, Inc. (DX–53), which, by the testimony of Williamowsky, were published in, or prior to, 1966 and at that time, were placed of record in the prior art files of the U. S. Patent Office. These catalogues illustrate plastic vials or containers which are fitted with snap cap lids having horizontally projecting thumb tabs protruding from the lowermost portion of the skirt of the lids; they show internal plugs frictionally located in the openings at one end of plastic vials and containers. In

one location of the Celluplastics catalogue, both the containers with snap cap lids and the containers with plugs therein are illustrated on the same page of the catalogue.

26. Certain testimonial assertions of the witnesses and factual admissions by the plaintiff should be cited as further evidence of such scope and content. Melton testified as to his personal awareness, from the time of his youth, of the recessed, internal plugs or closures of the sort shown in the Budan patent, and also actually provided in the model constituted by DX–18 (a combination of the Budan and Cadwell patents).

The plaintiff's President Hoffman admitted at the trial involving the original Hall patent that placement of a thumb tab on a plastic snap cap lid on the lowermost portion of the cap skirt, and formed integrally therewith, had been known long before the plaintiff's alleged invention, and that the placement of the thumb tab at that point was the obvious location where it should be placed. (TR 114, first trial)

The inventor Hall testified or admitted during the prior litigation that a key could be anything which goes into a hole (TR 87 first trial and Hall deposition, first trial, p. 43), and also stated that the thumb tab, long existent and used in closures made by the plaintiff as well as by others prior to Hall's alleged invention, was minimally altered to allow it to function as a key (TR 37–43, first trial).

The plaintiff has acknowledged that plastic plugs of the type shown in the Celluplastics and Lermer trade catalogues were made by a number of manufacturers, and were known to the plaintiff to have existed prior to the time that it filed its original application leading to the invalid patent (Plaintiff's Answers to Defendant's Interrogatories 35 through 57 and Requests of Admissions 21–23, present litigation).

The plaintiff has admitted that the projecting key elements shown in the Raschick and Cadwell patents also function as thumb tabs. (See Plaintiff's Answers to Defendant's Interrogatories 1 and 2, present litigation).

27. The court finds that "the level of ordinary skill" in this art at the time that the invention was allegedly made in 1968 was that which was possessed by one having some practical experience in tool and die design, construction and operation, exposure to container and lid or closure construction where such involved plastic as the material of construction of such container and closure, and a general knowledge of the field of mechanics as such applies in the case of open ended containers closed by a lid engaged, attached or secured thereto. Such principles would include an understanding of frictional engagement between lids and containers, an understanding of interlocking beads allowing a closure to be snapped onto a container, an understanding of screw-threaded caps for containers and some understanding of how one mechanical element might interlock or interfit with another to provide a key function used to engage and then pull out a plug from a container.

28. Considering these skills as those possessed in an average degree by one ordinarily skilled in the art, the court concludes, and so finds, that the expert witness Melton possesses such ordinary skill by reason of his background and work experience over a number of years and by reason of the nature of his work experience during the era in which the alleged invention in suit was conceived.

29. With respect to the witness Williamowsky, this witness had practical experience in the field of mechanical engineering, was an attorney and member of the bar, served many years as an Examiner in the Patent Office in which he examined patent applications in many arts, some of which dealt with closures, and was a member of the Board of Appeals of the Patent Office. From this background, he obtained wide and in-depth exposure to various types of closures and caps, and was moreover, uniquely qualified in the terminology and application of the provisions of the patent statute, and especially 35 U.S.C. § 103.

30. The three expert witnesses who testified in this case bring to the court the

enlightenment afforded by three varied, yet equally valid, perspectives with respect to the prior art placed in evidence, each based on a different experiential background and level of formal educational training, yet each valuable and helpful because of the ability of these experts to have different varied insights into the skill of this art, and the impact of the various prior art references upon this technology.

31. At trial, defendant offered a model or prototype (DX–18) which illustrated the manner in which the teachings of the Cadwell and Budan patents would be combined by an ordinarily skilled artisan after both patents had issued and one of ordinary skill in the art had knowledge of both. A small milk bottle was provided with a recessed internal paper closure or plug of the type shown in Budan (and confirmed as having been existent prior art by the personal recollection of the witness Melton), and this assembly was covered by a metal cap constructed in precise accordance with the illustration and instructions to be found in the Cadwell patent.

When the model (DX–18) is examined, it is perceived that both in form and structure, and as well as in operation, it is strikingly similar to the container closure assembly claimed by the plaintiff. It has the snap cap lid; that lid carries a horizontally projecting thumb tab-key element formed integrally with the lid and joined thereto at the bottom of the lid skirt; it carries a recessed internal closure; and the key on the external cap, after facilitating removal of the cap by a thumb pressed against the key, is used to engage the recess in the internal cap and remove it.

32. In sum, if the composite Budan-Cadwell model (DX–18) does not make absolutely clear, by itself, the structure claimed by the plaintiff, there can be no question that that structure would emerge unequivocally and with clarity from a concurrent consideration of this model along with Figure 3 of Italian patent (DX–6 and DX–21), given further what the plaintiffs have told us was understood and obvious in the plastic injection molding art in 1968, as yet further enlightened by the type of thumb tab-key element shown in the cited British patent (also shown in DX–21).

33. When the above-described prior art is considered in light of the testimony of the witnesses Melton and Williamowsky, the court is convinced that the claimed closure assembly would have been obvious to one having ordinary skill in the art in mid-1968.

34. The presumption of validity which attaches to the issuance of a patent has been overcome, in the court's conviction, by the suggestive teachings of important and pertinent references (Taylor, Yochem, British Patent 598,455, British Patent 757,918 and Ball U. S. Patent 1,513,677), none of which were before Patent Examiner Hall who examined the application leading to the patent in suit. (DX–2 and Williamowsky testimony). The court has been persuaded to this conclusion by the clear and convincing evidence of the defendant, and by the citation of these references, not previously considered, as they bear upon and supplement the teaching of the basic patents herein previously discussed.

35. The court is cognizant of the fact that a number of prior art patents and several publications were listed or cited by the defendant in discharge of its duty to apprise plaintiff of the "state of the art" as directed by 35 U.S.C. § 282. It is noted, however, that of these various patents, only about ten of them were principally relied upon by defendant at trial, and clearly appear to be the most pertinent prior art with respect to the validity of the claims in issue. Moreover, as to even these patents, their character is such that, as noted by the court above, the patents may be grouped and viewed as including parallel teachings in some instances.

*Conclusions of Law*
### GENERAL CONCLUSIONS

This court has subject matter jurisdiction of this action under § 281 of Title 35 of the United States Code, and under § 1338 of Title 28 of the United States Code. The court further has jurisdiction of the parties, and venue is proper.

A United States Patent issued by the United States Patent Office is presumed valid. 35 U.S.C. § 282.

The burden of establishing invalidity of a patent or any claim thereof rests on the party asserting such invalidity, and invalidity of the patent is a defense to a suit for infringement of the patent. 35 U.S.C. § 282.

Invalidity of an issued patent can be shown on the basis that the patent was issued in contravention of 35 U.S.C. § 102 (subject matter of claims anticipated and lack novelty) and/or 35 U.S.C. § 103 (subject matter of claims obvious). 35 U.S.C. § 282.

A defense to a suit for infringement of a patent is also the unenforceability of the patent. 35 U.S.C. § 282.

■ The presumption that an issued patent is valid is rebuttable, and can be overcome by evidence which is clear and convincing. *Radio Corp. of America v. Radio Engineering Laboratories, Inc.,* 293 U.S. 1, 54 S.Ct. 752, 78 L.Ed. 1453, 21 USPQ 353 (1934); *Scaramucci v. Dresser Industries, Inc.,* 427 F.2d 1309, 165 USPQ 759 (10th Cir. 1970); *Griswold v. Oil Capital Valve Co.,* 375 F.2d 532 (10th Cir. 1967); *Bewal, Inc. v. Minnesota Mining and Manufacturing Co.,* 292 F.2d 159, 129 USPQ 440 (10th Cir. 1961); *Cummings v. Moore,* 202 F.2d 145, 96 USPQ 210 (10th Cir. 1953).

■ The presumption of patent validity is weakened or destroyed where even one prior art reference pertinent to the structure claimed was not cited by the Patent Examiner who examined the patent in suit, *Mayview Corp. v. Rodstein,* 480 F.2d 714, 718, 178 USPQ 449 (9th Cir. 1973); *Jaybee Manufacturing Corp. v. Ajax Hardware Manufacturing Corp.,* 287 F.2d 228, 229, 128 USPQ 278 (9th Cir. 1961), and in such case, the defendant's burden then becomes one of establishing the invalidity of the claims in view of such prior art by a preponderance of the evidence, *Dual Manufacturing & Engineering, Inc. v. Burris Industries, Inc.,* 205 USPQ 1157, 1162 (7th Cir. 1980); *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc.,* 597 F.2d 201, 202 USPQ 356, 361 (10th Cir. 1979); White, 3 *Patent Litigation: Procedures & Tactics,* § 8,03[2], pp. 8–40, 8–41.

■ Even with respect to prior art patent references considered by the Patent Office Examiner prior to granting a patent, the presumption of validity which generally attaches to the issuance of the patent is rebuttable by clear and convincing evidence, *Dual Manufacturing & Engineering, Inc., v. Burris Industries, Inc., supra. Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc.,* 260 F.2d 811, 119 USPQ 231 (10th Cir. 1958); *United States Air Conditioning Corp. v. Governair Corp.,* 216 F.2d 430, 432, 103 USPQ 231, 232 (10th Cir. 1954).

A Patent Examiner in the United States Patent and Trademark Office is required by its procedural rules to cite the art which the Examiner considers the most pertinent of that of which he is aware, and to list in the file history of the patent those classes and subclasses of subject matter which the Examiner has searched in the course of examining the application leading to the patent. 37 C.F.R. 1.106 and *Manual of Patent Examining Procedure,* § 904.02.

■ The scope of patent monopoly, and that which is covered in terms of excluding others from making, using and selling the thing patented, is defined by the claims of the patent, and it is to the claims, and not to the patent specification or drawings, that the finder of fact looks in determining questions of infringement, and of anticipation and obviousness under Sections 102 and 103 of the patent statute. *Marconi Wireless Telegraph Company of America v. United States,* 320 U.S. 1, 23, 63 S.Ct. 1393, 1403, 87 L.Ed. 1731, 57 USPQ 471 (S.Ct., 1943); *Jones v. Bodaness,* 189 F.2d 838, 841, 89 USPQ 480 (10th Cir. 1951); *Griswold v. Oil Capital Valve Co., supra.*

■ In the absence of a contrary intent clearly manifested by the patentee in the patent specification, the terms and words used in the patent claims are to be given their usual and ordinary meaning. *In re*

*Tamarin*, 187 F.2d 160, 38 CCPA 872, 88 USPQ 490 (1951); *In re Storrs*, 245 F.2d 474, 44 CCPA 981, 114 USPQ 293 (1957); *Universal Oil Products Co. v. Globe Oil & Refining Co.*, 137 F.2d 3, 58 USPQ 504 (7th Cir. 1943).

## CONCLUSIONS AS TO EVIDENTIARY AND PROCEDURAL MATTERS

■ Findings of Fact made by a trial court and affirmed on appeal in litigation between the same parties, and which are material and relevant facts in subsequent related, though not identical, litigation between the same parties, are binding on the parties in the subsequent litigation by the doctrine of collateral estoppel. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed. 210 (1979).

■ By the Findings of Fact entered in the first trial between these parties on the validity and infringement of the plaintiff's original patent, lids, closures and caps for bottles which can carry milk constitute analogous art to lids, closures and caps for bottles and vials in which medicine, drugs and poisons can be stored, and are proper prior art for consideration by the court for what they taught the art of container and lid design and construction. Finding of Fact No. 66, *Plastic Container Corporation v. Continental Plastics of Oklahoma, Inc.*, Civil Action No. 72–825.

■ In the present litigation, *stare decisis* and "law of the case" establish that, with respect to the subject matter of this litigation, the plaintiff's safety container closure assembly as here claimed, except for the thumb pushing function recited by the claims, was fully and entirely disclosed by the prior art before the trial court during the trial of the plaintiff's first patent, and particularly the Mostoller and Velt patent. *Illinois Tool Works, Inc. v. Foster Grant Co., Inc.*, 547 F.2d 1300, 192 USPQ 365, 367 (7th Cir. 1976). Therefore, the following structure must be here conclusively held to be completely disclosed by the cumulative prior art patent references both now before the court and then before the trial court and the appellate court:

(a) a container having an opening,

(b) an internal closure in that opening and having a key recess,

(c) an external cap positioned over the container opening and provided with a peripheral skirt,

(d) a key carried on the lowermost part of the skirt and insertable into the key recess to remove the internal closure, and

(e) an annular bead on the interior of the cap skirt for snapping over a complementary bead around an outer periphery of the container opening.

A statement is not hearsay if it is offered against a party and is his own statement, either in his individual or in a representative capacity, or is a statement of which he has manifested his adoption or belief in its truth, Rule 801(d)(2), *Federal Rules of Evidence*, and depositions of parties taken in the course of prior litigation and containing admissions by that party are admissible against the party in subsequent litigation as independent, substantive, original evidence, provided only that the party was represented by counsel at such deposition. F.R.C.P. 32(a)(2); Rules 618 and 801(d)(2), *Federal Rules of Evidence; Insul-Wool Insulation Corp. v. Home Insulation, Inc.*, 176 F.2d 502, 82 USPQ 149, 150 (10th Cir. 1949); 4A *Moore's Federal Practice* § 32.04, p. 32–15 and § 32.08, p. 32–17.

The depositions of the patentee Hall and plaintiff's President Hoffman, as taken in preparation for the first litigation between these parties involving the original invalidated Hall patent, were a part of the record of that first litigation (trial transcript, first litigation, pp. 21 and 88).

An expert may testify as to his opinion on, or what he infers as to, an ultimate issue to be decided by the trier of fact, and facts or data in a particular case upon which an expert bases an opinion, or an inference, may be those perceived or made known to him before the hearing. If these are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the

facts or data need not themselves be admissible in evidence. Rules 703, 704 and 705, *Federal Rules of Evidence; United States v. Hollman*, 541 F.2d 196, 200 (8th Cir. 1976); *Bauman v. Centex Corporation*, 611 F.2d 1115, 1120 (5th Cir. 1980); *United States v. Featherston*, 325 F.2d 539 (10th Cir. 1963).

## CONCLUSIONS RELATIVE TO LACK OF NOVELTY AND ANTICIPATION UNDER 35 U.S.C. § 102

■ The definition of anticipation of claimed subject matter under § 102 of the patent statute differs within the U. S. Patent and Trademark Office as compared to the United States District Courts. In the U. S. Patent and Trademark Office, in order to preclude allowance of patent claims on the basis of anticipation by prior art, precise and identical correspondence between the claimed subject matter and what is shown and described in a single prior art patent or publication is required. *Ex parte Broadbent, Rose, and Walpole*, 150 USPQ 468 (P.O.Bd. of Appeals, 1965); *In re Kalm*, 378 F.2d 959, 54 CCPA 1466, 154 USPQ 10 (1967); *In re Arkley, Eardley, and Long*, 455 F.2d 586, 59 CCPA 804, 172 USPQ 524 (1972).

■ As contrasted with the strict test of anticipation applied in the U. S. Patent Office, the United States District Courts, in general and by the weight of authority, employ a more liberal test of anticipation. Thus, in the Tenth Circuit anticipation or lack of novelty is established

(a) where there is "an aggregation of elements old in the art which, when considered together, disclose all of the claimed elements and when no new functional relationship arises from their combination," *Williams Iron Works Co. v. Hughes Tool Co.*, 109 F.2d 500, 44 USPQ 322 (10th Cir. 1940); *Scaramucci v. Dresser Industries, Inc., supra*, or

(b) where all the elements of the claimed invention, or their equivalents, are found in a single structure or description (i. e., prior art reference) where they do substantially the same work in substantially the same way, *Scaramucci v. Dresser Industries, Inc., supra; McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 398, 145 USPQ 6 (10th Cir. 1965); *Griswold v. Oil Capital Valve Co., supra* at 537.

■ When the only features distinguishing a purported invention from a prior art product are insubstantial, and only require that one of ordinary skill in the art exercise that skill to equate the two and complete the work, the prior art product anticipates the purported invention and renders it unpatentable, and this is true though the prior art product falls short of "complete anticipation." *Deep Welding, Inc. v. Sciaky Bros., Inc.*, 417 F.2d 1227, 1234, 163 USPQ 144 (7th Cir. 1969); *Leishman v. General Motors Corp.*, 191 F.2d 522, 530–531, 91 USPQ 190 (9th Cir. 1951); *The Western States Machine Co. v. S. S. Hepworth Co.*, 147 F.2d 345, 64 USPQ 141 (2nd Cir. 1945), *cert. denied* 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991; *Trabon Engineering Corp. v. Dirkes*, 136 F.2d 24, 58 USPQ 97 (6th Cir. 1943); *Zephyr American Corp. v. The Bates Manufacturing Co.*, 128 F.2d 380, 53 USPQ 495 (3rd Cir. 1942); *Simmons v. Hansen*, 117 F.2d 49, 48 USPQ 345 (8th Cir. 1941); *The American Laundry Machinery Co. v. Strike*, 103 F.2d 453, 41 USPQ 423 (10th Cir. 1939); *Electrical Engineers' Equipment Co. v. Champion Switch Co.*, 23 F.2d 600 (2nd Cir. 1928); *Andis Clipper Co. v. Oster Corp.*, 206 USPQ 23, 31 (E.D.Wisc., 1979).

■ Analogous prior art is that art to which one seeking a solution to a particular problem, or attempting to achieve a particular result, would look for the purpose of finding the answer to that problem, or suggestions as to the attainment of that result. *Burgess Cellulose Co. v. Wood Flong Corp.*, 431 F.2d 505, 166 USPQ 417 (2nd Cir. 1970); *In re Miller*, 311 F.2d 955, 50 CCPA 885, 136 USPQ 205, 208 (1963); *B & M Corp. v. Koolvent Aluminum Awning Corp. of Indiana*, 257 F.2d 264, 118 USPQ 191 (7th Cir. 1958); *In re Shapleigh*, 248 F.2d 96, 45 CCPA 705, 115 USPQ 119 (1957); *The General Metals Powder Co. v. The S. K. Wellman Co.*, 157 F.2d 505, 71 USPQ 23 (6th Cir. 1946).

When considering the subject matter of containers, and closures for those containers, in patent claims, the art which is involved and which determines the scope of scrutiny and inquiry of prior art, is that of "mechanics," and other types of containers and closures are within this art and constitute analogous art. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 37, 86 S.Ct. 684, 703, 15 L.Ed.2d 545, 148 USPQ 459 (1966); *The Toledo Pressed Steel Co. v. Standard Parts, Inc.*, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, 41 USPQ 593 (1939); *Funnelcap, Inc. v. Orion Industries, Inc.*, 421 F.Supp. 700, 192 USPQ 517 (D.Del. 1976); Finding of Fact No. 66 from prior litigation between the parties.

██ In determining anticipation, and also in weighing obviousness, reference in the preamble of a patent claim to a use or function of the claimed device does not prevent prior art devices having all of the thereafter positively recited structural elements, but perhaps used for a different purpose, from anticipating the claimed structure, or rendering it obvious, *Marston v. J. C. Penney Company, Inc.*, 353 F.2d 976, 986, 148 USPQ 25 (4th Cir. 1965); *In re Sinex*, 309 F.2d 488, 50 CCPA 1004, 135 USPQ 302, 305 (1962); *In re Laurent*, 186 F.2d 741, 38 CCPA 811, 88 USPQ 369, 371 (1951); and an old mechanism fully capable of a use not then observed anticipates a later patent for the application of that mechanism to the new use, and it is immaterial whether the prior patentee of the old mechanism realized the full potential of his device. *Anderson v. Phoenix Products Co.*, 226 F.2d 191, 107 USPQ 66 (7th Cir. 1955); *Mathews Conveyer Company v. Palmer-Bee Co.*, 135 F.2d 73, 57 USPQ 219 (6th Cir. 1943).

## CONCLUSIONS RELATIVE TO OBVIOUSNESS UNDER 35 U.S.C. § 103

Title 35 U.S.C. § 103 provides:

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in Section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."

*Graham v. John Deere Co. of Kansas City, supra,* directs that:

"Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved."

██ The issue of obviousness of the subject matter claimed in a patent, as contemplated by 35 U.S.C. § 103, is an issue of fact. *Norfin, Inc. v. International Business Machines Corp.*, 625 F.2d 357 (10th Cir. 1980); *Scaramucci et al. v. Dresser Industries, Inc., supra; Rutter v. Williams*, 541 F.2d 878, 193 USPQ 760 (10th Cir. 1976); *Moore v. Shultz*, 491 F.2d 294, 300, 180 USPQ 548 (10th Cir. 1974); *Halliburton Co. v. Dow Chemical Co.*, 514 F.2d 377, 185 USPQ 769, 770 (10th Cir. 1975); *Boutell v. Volk*, 449 F.2d 673, 171 USPQ 668 (10th Cir. 1971); *The Eimco Corp. v. Peterson Filters and Engineering Co.*, 406 F.2d 431, 160 USPQ 182 (10th Cir. 1968).

██ The law conclusively presumes that the imaginary person of ordinary skill in the art as contemplated by § 103 of the patent statute has complete knowledge of all the prior art contemplated by § 102. Thus, complete and full knowledge of all prior patents, publications and public uses which pre-existed the alleged invention appearing in a patent claim being tested for obviousness is presumed on the part of persons having ordinary skill in the art immediately prior to the time the invention was allegedly made. *Dann, Commissioner of Patents v. Johnston*, 425 U.S. 219, 96 S.Ct. 1393, 47 L.Ed.2d 692 (1976); *Halliburton Co. v. Dow Chemical Co., supra; Continental Can Company, Inc. v. Crown Cork & Seal Company, Inc.*, 415 F.2d 601, 603, 163 USPQ 1 (3rd Cir. 1969), *cert. denied* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94; *Esso Research*

& Engineering Co. v. Kahn & Company, Inc., 379 F.Supp. 205, 183 USPQ 582 (D.Conn.1974).

▮ Where the patent in question and under attack as to validity clearly equates, in its specification, two alternate structures or modes of operation to each other, though but one of these is set forth in the claims of the patent, the patentee must then accept the same equivalency applied to the prior art, and the equivalent structures or modes of operation so identified will be considered to be equivalent to the claim if found in the prior art. *In re Hinman*, 333 F.2d 226, 51 CCPA 1433, 141 USPQ 785 (1964); *In re LaVerne and LaVerne*, 229 F.2d 470, 43 CCPA 767, 108 USPQ 335 (1956); *In re LeBaron*, 223 F.2d 471, 42 CCPA 956, 106 USPQ 176 (1955); *In re Borcherdt, Hanblet and Webb*, 197 F.2d 550, 39 CCPA 1045, 94 USPQ 175 (1952). In the present case, therefore, "thumb tabs" are equivalent to "finger tabs," and "lifting" on such tabs is equivalent to "pushing" on such tabs. (See specification of Hall U. S. Patent Re. 28,-861, DX–1.)

It is not the quantity, but the quality of prior art patent references cited which is of importance in determining obviousness under 35 U.S.C. § 103, and the number of patent references which may be cited prior to the trial under the broad requirements of 35 U.S.C. § 282 is immaterial to the question of obviousness or nonobviousness. *The Duplan Corp. v. Deering Milliken, Inc.*, 444 F.Supp. 648, 197 USPQ 342, 403 (D.S.Car., 1977); *Philco Corp. v. Admiral Corp.*, 199 F.Supp. 797, 131 USPQ 413 (D.Del., 1961); *Thys Co. v. Oeste*, 111 F.Supp. 665, 96 USPQ 294 (N.D.Cal., 1953); *Dixie-Vortex Company v. Imperial Paper Box Corp.*, 22 F.Supp. 209, 36 USPQ 446 (E.D.N.Y., 1938).

▮ The independent and isolated development or evolution of the structure claimed in a patent by others than the patentee, and without benefit of any suggestion or knowledge imparted to such others by the patent or patentee, is strong evidence of the obviousness of the subject matter of the claims as a whole. *Sidewinder Marine, Inc. v. Starbuck Kustom Boats and Products, Inc., supra; Reeves Brothers, Inc. v. U. S. Laminating Corp.*, 417 F.2d 869, 872, 163 USPQ 577 (2nd Cir. 1969); *Novo Industrial Corp. v. Standard Screw Co.*, 374 F.2d 824, 828, 152 USPQ 543 (7th Cir. 1967); *Graham v. Jeoffroy Mfg., Inc.*, 206 F.2d 769, 771 (5th Cir. 1953); *Elfab Corp. v. NCR Corp.*, 204 USPQ 999, 1047 (C.D.Cal., 1979), aff'd. 557 F.2d 687; *Sheller-Globe Corp. v. Milsco Manufacturing Co.*, 206 USPQ 42, 69 (E.D.Wisc., 1979); *The Allen Group, Inc. v. NuStar, Inc.*, 195 USPQ 513, 524 (N.D.Ill., 1977).

▮ A new combination of old elements, whereby a new and useful result is obtained, or whereby an old result is obtained in a more facile, economical and efficient way in a particular environment which presented peculiar and difficult problems, is a true combination, *Scaramucci v. Dresser Industries, Inc., supra; Admiral Corp. v. Zenith Radio Corp.*, 296 F.2d 708, 131 USPQ 456, 459–460 (10th Cir. 1961); *Bewal, Inc. v. Minnesota Mining and Manufacturing Co., supra; Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc., supra; Oliver United Filters, Inc. v. Silver*, 206 F.2d 658, 662 (10th Cir. 1953); *Harris v. National Machine Works, Inc.*, 171 F.2d 85, 79 USPQ 320 (10th Cir. 1948); *Williams Iron Works Co. v. Hughes Tool Co., supra*, and provided that its discovery required greater skill and higher thought than would be expected of one having ordinary skill in the art, it is patentable. *Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc., supra.*

▮ The mere carrying forward or extended application of an earlier idea or conception of another, involving a change only in form, proportion or degree, where the same work is performed in the same way by substantially the same means, although with better results, is not a patentable invention. *Ballas Liquidating Company v. Allied Industries of Kansas, Inc.*, 205 USPQ 331, 348 (D.Kans., 1979); *Cole v. Hughes Tool Co.*, 215 F.2d 924, 103 USPQ 1 (10th Cir. 1954); *United States Air Conditioning Corp. v. Governair Corp., supra; Sage v.*

*Parkersburg Rig and Reel Co.*, 80 F.2d 954, 28 USPQ 65 (10th Cir. 1935); *B. F. Goodrich Rubber Co. v. Gates Rubber Co.*, 54 F.2d 580, 12 USPQ 147 (10th Cir. 1931); *Linville v. Milberger*, 34 F.2d 386, 2 USPQ 417 (10th Cir. 1929).

■ The mere substitution of equivalents which do substantially the same thing in the same way, even though better results may be produced, is not such an invention as will sustain a patent. *Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc., supra; The Dow Chemical Co. v. Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 330, 65 S.Ct. 647, 651, 89 L.Ed. 973, 64 USPQ 412 (1945).

■ Patent claims directed, as here, to a combination of old elements must be carefully scrutinized because of the improbability of finding patentable invention in an assembly of old elements. *The Great Atlantic and Pacific Tea Co. v. Supermarket Equipment Corp.*, 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, 87 USPQ 303 (1950); *Deere & Co. v. Hesston Corp.*, 593 F.2d 956, 962, 201 USPQ 444 (10th Cir. 1979); *True Temper Corp. v. DF&I Steel Corp.*, 601 F.2d 495, 506, 202 USPQ 412 (10th Cir. 1979). Even in a case where old elements are combined in an assembly so as to produce striking results, if these elements continue individually to function as they did previously, the assembly is not patentable. *Anderson's-Black Rock, Inc. v. Pavement Salvage Company, Inc.*, 396 U.S. 57, 90 S.Ct. 305, 24 L.Ed.2d 258, 163 USPQ 673 (1969); *Deere & Co. v. Hesston Corp., supra.*

■ It is not invention and does not involve patentability to simply make of a plastic material that which has previously been made of metal, glass, ceramic or the like. *Ling-Temco-Vought, Inc. v. Kollsman Instrument Corp.*, 372 F.2d 263, 267, 152 USPQ 446, 449–450 (2nd Cir. 1967); *Griffith Rubber Mills v. Hoffar*, 313 F.2d 1, 3–4, 136 USPQ 334, 336–338 (9th Cir. 1963); *In re Miller, supra; Otis v. National Tea Co.*, 218 F.2d 153, 154, 104 USPQ 80, 81 (7th Cir. 1955); *Timken-Detroit Axle Co. v. The Cleveland Steel Products Corp.*, 148 F.2d

267, 271, 65 USPQ 76, 80–81 (6th Cir. 1945), *cert. denied* 326 U.S. 725, 66 S.Ct. 30, 90 L.Ed. 430, 67 USPQ 360, *reh. denied* 326 U.S. 808, 66 S.Ct. 136, 90 L.Ed. 492 (1945); *Evr-Klean Seat Pad Co. v. Firestone Tire and Rubber Co.*, 118 F.2d 600, 602, 49 USPQ 129, 130–131 (8th Cir. 1941); *Ballas Liquidating Company v. Allied Industries of Kansas, Inc., supra.*

■ A mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than previously performed, is not a patentable invention. *Scaramucci v. Dresser Industries, Inc., supra; McCullough Tool Co. v. Well Surveys, Inc., supra.*

■ Where, as here, a particular limitation in a claim (the thumb pushing function) is the only basis upon which the claim was allowed, the disclosure of that same feature and limitation in prior art not cited by the Patent Office renders the claim invalid under 35 U.S.C. § 103. *Itek Corp. v. Information International, Inc.*, 206 USPQ 88, 92 (D.Mass., 1979).

### CONCLUSIONS RELATIVE TO VALIDITY OF PLAINTIFF'S REISSUE PATENT

■ Under the aggregation of elements test partially enunciated in *Scaramucci v. Dresser Industries, Inc., supra*, at 1314, and more completely in *Bewal, Inc. v. Minnesota Mining and Manufacturing Co., supra; Oliver United Filters, Inc. v. Silver, supra; and Williams Iron Works Co. v. Hughes Tool Co., supra*, and under the equivalency of elements test also enunciated in *Scaramucci* at 1314, the two claims of plaintiff's reissue patent define an old structure which is not patentable. Each structural element of each claim can be found in the prior art patents adduced at trial, and each and every function which these elements perform as they are found in the prior art is brought with them into the concert of plaintiff's assembly. Suggestion for this claimed orchestration is pellucid from the prior art, and the results thereof are no more than to be expected. The claimed structures lack

novelty over the nearly equivalent Mostoller and Budan structures when their teachings are supplemented by the mere "skill of the calling" as it had developed by the time of the alleged invention.

Additionally, but also in the alternative, the claimed container closure assembly is not patentable because it would have been obvious to one having ordinary skill in the art, and the patent was issued in contravention of 35 U.S.C. § 103. The Taylor, Yochem, British 598,455 and British 757,918 patents are pertinent prior art references not considered by the Patent Office, and the presumption of validity is destroyed.

The court is induced to invalidate the claims of plaintiff's reissue patent in suit by the clear and convincing evidence of defendant which was uncontradicted.

## ON REQUEST FOR ATTORNEY'S FEES

### Findings of Fact

1. In this case, in which the plaintiff charged the defendant with infringement of United States Reissue Patent Re. 28,861, the litigation was unusual in that it was the second time that the plaintiff had sued this same defendant claiming exclusive rights in the same invention by reason of rights accorded to the plaintiff under the United States patent laws. In the first litigation between the same parties, the plaintiff brought suit on original United States Patent 3,473,681 (Hall), which was predicated upon the same alleged act of invention as that which constituted the basis for the reissue patent. A slight difference existed in the manner in which the invention was claimed in the first patent from the two narrower claims of the reissue patent.

2. In the first action between these parties, the plaintiff's original patent had been declared invalid, and the defendant was further found not to infringe that patent. These holdings of patent invalidity and non-infringement were affirmed by the United States Tenth Circuit Court of Appeals. (No. 74–1123 (10th Cir. Oct. 30, 1974).)

3. Following the invalidation of its original patent, the plaintiff availed itself of the provisions of the patent law which permit a patent which has been held invalid to be reissued if such invalidity were shown to have resulted from an error made without any deceptive intention on the part of the patentee in the obtainment of the first and invalid patent.

4. The plaintiff herein has indicated that the only company other than plaintiff known to have made and sold a device alleged to infringe the plaintiff's original patent was the defendant, and the motivation of the plaintiff in applying for a reissue of its invalid original patent can only be attributed to an intention by the plaintiff to again sue the defendant on the reissue patent, should such be obtained.

5. Under these circumstances, and considering the facts that the defendant was put to substantial, unremunerated expense in showing the original Hall patent to have been improperly issued and invalid, and that the defendant reasonably continued to manufacture the device which it had previously been totally exonerated in making and selling, the court considers that fairminded men would think it incumbent upon the plaintiff, upon making application to the United States Patent and Trademark Office for the reissuance of its patent, to inform the defendant of such action, which plaintiff did not do.

6. The plaintiff did not inform the defendant of its application for reissue of its invalid original patent, nor did the plaintiff inform the defendant of any of its actions in any way prior to the time that the plaintiff filed this suit on December 13, 1976.

7. Had plaintiff notified the defendant of its action in seeking reissuance of its patent, the defendant could have taken action to avoid the present litigation in any of several ways, including alteration of its alleged infringing product, or contesting, perhaps successfully, the plaintiff's obtainment of its reissue patent through the assertion of prior art by use of Rules 291 and 292 of the Rules of Practice in Patent Cases then in effect, or it might have sought to reach an accommodation with the plaintiff by way of license or settlement. The defend-

ant was accorded none of these opportunities, but instead was allowed to continue to build up its investment in the safety closure it had been manufacturing from prior time of the first suit, and which it reasonably assumed it could legally manufacture after invalidation of the plaintiff's original patent, and the prior finding of non-infringement.

8. Viewed in the light of the plaintiff's failure to notify or in any way inform the defendant of its action in seeking reissue of its patent, it is believed that the present litigation was rendered of a more vexatious and protracted nature than would likely have been necessary. The court perceives that under the provisions of Rule 291, the defendant might have called the prior art located and before the court in this litigation to the attention of the Patent Examiner who examined the plaintiff's reissue application, and might also have called to the attention of that Examiner the entire record of the prior litigation between the plaintiff and the defendant, including the plaintiff's own admissions concerning its prior activities and the prior art.

The award hereafter described remains remedial, and is not intended as punishment for the above, or any other actions of the plaintiff.

9. During the time that the plaintiff's reissue patent application was pending in the U. S. Patent Office and being examined, the plaintiff did not cite or make the Examiner aware of its own past vial and cap manufacturing activities which preceded the filing date of its original patent application (November 21, 1968), nor did it provide the Examiner with any portion of the record of the discovery and trial proceedings in the first litigation on its first patent, nor did it advise the Patent Examiner of the plaintiff's own knowledge of the manufacture and sale, prior to the time it applied for its first patent, or plastic vials fitted with plastic plugs which inserted in the mouths of such vials and were retained there by friction.

10. The plaintiff also failed to advise the Patent Examiner that the plaintiff considered that Raschick U. S. Patent 1,621,902 and Cadwell U. S. Patent 1,092,519 each carried a key or prong which also had a thumb tab function, which plaintiff subsequently has admitted in responding to defendant's Request for Admissions Nos. 1 and 2.

11. This court finds, after consideration of the testimony of the witnesses herein as to the average skill in this art, and an examination of the patents in question, that should this information *in toto* have been made known to the Patent Examiner, the Examiner would quite likely have reached a different result in his examination of the patent application which led to the plaintiff's reissue patent. It believes that failure to do so exceeded simple negligence in view of the heavy burden imposed upon patent applicants to make a full and complete disclosure of all material facts to the Patent Office. Such disclosure would likely have obviated the need for the present litigation, which can be characterized under all the circumstances, as vexatious and unjustified.

12. From the time that the plaintiff's original patent was held invalid by the Tenth Circuit Court of Appeals (October 30, 1974) until the plaintiff succeeded in obtaining reissuance of its patent, the plaintiff had no patent whatsoever covering the structure which has been the subject of this litigation, and which was the subject of the litigation involving plaintiff's prior invalidated patent. Even after the plaintiff obtained its reissue patent, by its own acknowledgment the reissue claims were slightly narrower than the claims of the plaintiff's original patent, and thus failed to cover all of the structures which would have been covered by the plaintiff's original patent.

13. Notwithstanding the fact that the plaintiff's original patent was declared invalid by the Tenth Circuit Court of Appeals on October 30, 1974, the plaintiff thereafter negligently or otherwise continued to place the number of its original invalid patent (3,473,681) on child-resistant safety closures and containers made by the plaintiff, for

the plaintiff was doing so at the time of this suit—in fact, at the time of trial (plaintiff's Exhibit 34, statements of Mr. Walter Ames, counsel for plaintiff, and statements of the witness Williamowsky for defendant).

14. The placement of the number of a U. S. patent on a marketed device is for the purpose of giving notice to the world of the fact that such device is patented, and thereby enabling the public to avoid infringement of that patent. The placement of a patent number on a device thus deters others from making identical or closely similar devices, or from using such devices or from selling them—even though such devices are manufactured by another.

15. When plaintiff's marking of its invalid patent number on safety closures and containers manufactured and sold by it from October 30, 1974, until the present time is considered, in conjunction with the fact that the plaintiff circulated to the trade and to the market for both its own patented safety closures and the safety closures of the defendants, letters charging the defendant with infringing its original patent, and indicating that those who used and sold such devices as made by the defendant would also be guilty of infringement (plaintiff's Answers to defendant's Interrogatories 41, 42, 48, 54 and 55 as filed of record in litigation on the original Hall patent, and documents attached thereto), it is evident that the plaintiff's unexplained actions were severely detrimental to the defendant and constituted a misuse of both its original patent and of the present reissue patent which should, in fact, have been the number placed on the current manufacture of the plaintiff (35 U.S.C. § 287 and § 292).

16. In the absence of any specific proof of the plaintiff's motives in the placement of the number of its invalid patent on safety closures manufactured by it when no valid patent of that number in fact existed, deceitful intent of the type contemplated by 35 U.S.C. § 285 cannot be imputed to the plaintiff. Quite clearly, however, the plaintiff's actions again far exceeded simple negligence, and here were in fact reckless in character. Such conduct must be considered exceptional, and imparts an "exceptional" character to the present litigation.

17. The record of this litigation is replete with statements—indeed, strenuous urgings—by the plaintiff that the novelty and inventiveness of the plaintiff's safety container closure assembly, as claimed in the two claims of its reissue patent, resided in the provision on the external cap of an element which functioned both as a thumb tab and as a key for removing an internal plug. But a few examples of the plaintiff's tenacious adherence to this position are constituted by:

(a) plaintiff's Motion for Summary Judgment filed herein after remand (filed May 30, 1980), pages 2 and 5–6;

(b) plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment filed April 7, 1977, at pages 6–7 and 12;

(c) plaintiff-appellant's Brief on Appeal filed herein on December 14, 1977, pages 13–19; and

(d) Pretrial Order herein, Issues of Fact as seen by plaintiff, page 6.

18. In view of the plaintiff's own invariant and sole contention as to the sole point of novelty and invention resident in the claimed safety closures, the court finds that the plaintiff should have endeavored to terminate this litigation after the time (in July of 1980) when Taylor U. S. Patent 1,761,597 (Defendant's Exhibit DX–6) was called to the plaintiff's attention by the defendant. The reason is that that patent quite clearly and expressly teaches that an external cap snapped onto a container can carry, as a projection from the skirt of such cap, an element functioning both as a key for removal of an internal cap and as a finger or thumb tab. Continuing to pursue the litigation beyond the point that clear knowledge of such prior art was acquired by the plaintiff amounted to an unwarranted protraction of the litigation.

19. The plaintiff also unduly protracted the present litigation and rendered it substantially more vexatious to the defendant when the plaintiff continued to state up to

the time of trial that it intended to prove that its safety closure had been "commercially successful" and had "satisfied a long-felt need" (pages 3 and 8 of Pretrial Order). These issues are made important secondary considerations under the various tests of patent validity enunciated in *Graham v. John Deere*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), and it clearly would therefore be expected that the defendant would develop and be prepared to introduce counterproof on these issues. The defendant has in fact shown, as reflected in the Pretrial Order and in its verified costs presented to the clerk for assessment, that it intended to meet the thrust of the plaintiff's evidence on these issues, and had prepared to do so.

20. Despite these indications of intention to prove commercial success and long-felt need, the plaintiff produced no such proofs, nor any evidence in support of these allegations at the trial of this cause. The defendant was thus put to unnecessary preparation which could have been avoided had the plaintiff notified the defendant of its intention to make no showing on these issues.

21. The per-hour charges of the defendant's counsel for services rendered in this action are reasonable for a case of its length and complexity.

22. The defendant is clearly the prevailing party by virtue of judgment being rendered against the plaintiff.

23. Viewing the totality of the evidence, the facts of this case present an "exceptional" case within the meaning of 35 U.S.C. § 285.

### Conclusions of Law

█ 1. 35 U.S.C. § 285 provides that attorney's fees may be awarded to a prevailing defendant in an "exceptional" patent infringement suit. Such fees must be reasonable, and awarded only to a prevailing party. *Ashcroft v. Paper Mate Mfg. Co.*, 434 F.2d 910 (9th Cir. 1970).

█ 2. A finding that the case is exceptional may be based upon the plaintiff's

tactics in maintaining the suit, and where the litigation, though commenced in good faith, is vexatiously protracted, the case may be deemed as "exceptional" within the meaning of the statute. *True Temper Corp. v. CF&I Steel Corp.*, 601 F.2d 495, 508, 202 USPQ 412 (10th Cir. 1979).

█ 3. Whether attorney's fees shall be awarded pursuant to the provisions of § 285 of the patent statute is a matter within the sound discretion of the trial court. The *Q–Panel Company v. Newfield*, 482 F.2d 210 (10th Cir. 1973), and *Iron Ore Company of Canada v. Dow Chemical Co.*, 500 F.2d 189 (10th Cir. 1974).

█ 4. The award of attorney's fees under 35 U.S.C. § 285 is compensatory rather than punitive. *Halliburton Company v. Dow Chemical Company*, 514 F.2d 377, 381–382 (10th Cir., 1975).

█ 5. In holding a case exceptional within the meaning of § 285, the trial court should enter a conclusion of law that the case is "exceptional," and should make one or more findings of fact supporting such conclusion. *Plastic Container Corp. v. Continental Plastics of Oklahoma, Inc.*, 607 F.2d 885 (10th Cir. 1979).

█ 6. The statute contemplates misconduct on the part of the losing party which is so unfair and reckless as to make it unconscionable for the prevailing party to sustain the expense of counsel. *True Temper Corp. v. CF&I Steel Corp., supra*, at 509.

7. Included among various alternative grounds for awarding attorney's fees under § 285 are the plaintiff's tactics in maintaining his suit so that the litigation becomes vexatious or unduly protracted. *True Temper Corp. v. CF&I Steel Corp., supra*, and cases cited therein.

█ 8. The party who succeeds in invalidating an unlawful patent performs a valuable public service, and it is appropriate under such circumstances to reward the prevailing party by giving him attorney's fees for his efforts. *True Temper Corp. v. CF&I Steel Corp., supra*.

9. In considering an award of attorney's fees under § 285 of the patent statute, the patentee's conduct in obtaining his patent should be scrutinized, and his acts before the Patent Office, though short of fraud, will justify such award if in excess of simple negligence. *True Temper Corp. v. CF&I Steel Corp., supra; Monolith Portland Midwest Company v. Kaiser Aluminum & Chemical Corporation,* 407 F.2d 288, 294 (9th Cir. 1969).

10. The exercise of discretion in favor of the allowance of attorney's fees should have its source in unfairness or bad faith on the part of the losing party, or in some other equitable consideration such as vexatious or unjustified litigation which makes it unjust for the prevailing party in a particular case to bear the burden of its own counsel fees. *Merrill v. Builders Ornamental Iron Company,* 197 F.2d 16, 25 (10th Cir. 1952).

11. Some willfulness must exist on the part of a losing party before attorney's fees are awarded in a patent case. To be unconscionable, however, the losing party's conduct need not be actually fraudulent or amount to legal fraud, and any willful act with respect to the matter in litigation which would be condemned and pronounced wrongful by honest and fair-minded men will be sufficient to make the hands of the plaintiff unclean and vest the trial court with discretion to award reasonable attorney's fees to the prevailing party. *Thermovac Industries Corp. v. The Virtis Company, Inc.,* 159 USPQ 349 (S.D.N.Y., 1968); *Aeration Processes, Inc. v. Walter Kidde & Company, Inc.,* 177 F.2d 772, 773, 83 USPQ 403, 404 (2nd Cir. 1949).

12. Cease and desist letters circulated to the market for a patented product, and referring to alleged illegal activities of one charged to infringe a patent, are inherently damaging and deleterious to the business of the person or company so identified, and must be used only where there remains in the sender a good faith belief in a presumptively valid patent. *Kobe, Inc. v. Dempsey Pump Company,* 198 F.2d 416, 422–426 (10th Cir. 1952).

13. The defendant's costs in defending a patent infringement suit are generally substantially greater than those of the plaintiff, *Blonder-Tongue Laboratories v. University of Illinois Foundation,* 402 U.S. 313, 335–336, 91 S.Ct. 1434, 1446–47, 28 L.Ed.2d 788 (1971).

14. Considering the findings relative to the totality of the plaintiff's inequitable and unfair actions in this litigation, the court concludes that it would be an undue hardship for the prevailing defendant proved and established a total reasonable attorney's fee incurred in this litigation in the amount of $44,684.50. The court believes that this is an exceptional patent case within the meaning of § 285 of the patent statute for the collective reasons enumerated in these Findings of Fact, and considers that fair-minded men, under all the circumstances prevalent here, would believe the plaintiff's actions entitle the defendant to an award of one-half of its attorney's fees, or an amount of $22,342.25.

15. Accordingly, the court holds that the defendant is entitled to recover from the plaintiff an attorney fee as cost in the amount of $22,342.25, with interest from date of judgment as provided by law.

16. The court also holds that the costs incurred by the defendant in procuring an analytical research publication on the matter of child-resistant closures, as such publication was compiled in 1972, was a necessary and reasonable cost incurred preparatory to meeting the plaintiff's commercial success and long-felt need proofs, which the plaintiff indicated it intended to make at the trial of this cause, but nevertheless did not make. Therefore, the defendant is awarded its costs in this item in the amount of $300.00. This item of costs shall be added to the costs found by the clerk as those to which the defendant herein is entitled, making a total cost approved by the court, and recoverable by the defendant of $1,938.31.

Judgment, as described herein, for costs and attorney's fees, will be entered in favor of the prevailing defendant.